Ayrault *v.* Chamberlin.

[NEW YORK SPECIAL TERM, December 7, 1857. *Peabody,* Justice.]

———————◆———————

# AYRAULT *vs.* CHAMBERLIN and WOOD.

Where a partnership between attorneys is dissolved after they have commenced a suit to foreclose a mortgage, and a new partnership is formed, consisting of one of the members of the old firm, and a new member, and the latter goes out of the firm and transfers his interest in the costs, before the money is collected in the foreclosure suit, the member thus retiring is not liable for the default of his former partner in not paying over the money subsequently received by him.

W. & Y., who were partners in the practice of the law, were employed by the plaintiff as his attorneys, to collect a bond and mortgage given by E., and they commenced a suit for that purpose. During its progress, the partnership was dissolved, and C. & W. formed a new partnership as the successors of W. & Y., and continued the same for several years, when it was dissolved, and C. retired therefrom, W. continuing to practice as an attorney, in con-

Ayrault *v.* Chamberlin.

nection with K. Nearly a year after this dissolution, the money due upon the E. mortgage was collected and paid over to W. as the plaintiff's attorney on record. *Held* that the money having been collected long after the partnership between C. & W. had been dissolved, and the interest of C. therein had ceased, and there being no evidence of any new retainer, or any agreement to substitute C. & W. for the original attorneys, the relation of attorney and client was not subsisting in respect to that action, as between the plaintiff and C. when the money was paid to W.; and that therefore a *joint action would not lie against C. & W. to recover the money so collected.*

*Held also,* that before C. could be made liable, under such circumstances, for the default of W., it must be affirmatively shown that the new firm of C. & W. was in fact, by some agreement or understanding to which the plaintiff was a party, substituted for the old firm of W. & Y. in the foreclosure suit.

APPEAL by the defendants from a judgment entered upon the report of a referee.

There was no dispute between the parties as to the principal facts in this case. In the year 1844 the defendant Wood and John Young were partners in the practice of the law, and were retained by the plaintiff to foreclose a mortgage given by Alanson Elmer. They commenced a suit for that purpose, before the vice chancellor of the eighth circuit, in which Elmer appeared and put in the defense of usury. The cause was brought to a hearing before the vice chancellor and decided against the plaintiff. The cause was afterwards heard on appeal, by the supreme court, and decided in favor of the plaintiff, and was then carried by the defendant to the court of appeals, where the judgment of the supreme court was affirmed. In all these proceedings Mr. Wood alone appeared on the record as the solicitor and attorney for the plaintiff, and Mr. Young, Mr. Wood and Mr. Hastings, acted as the counsel. At the close of the year 1846, Young & Wood dissolved their copartnership, and the defendants, on the first day of January, 1847, formed a copartnership as attorneys and counsellors at law, and advertised themselves as the successors of Young & Wood. In June, 1847, the defendant Chamberlin purchased the interest of Mr. Young in the joint business of Young & Wood. The defendants continued to

carry on the business together as copartners until the 1st day of January, 1854, when their copartnership was dissolved, and the defendant Wood formed another copartnership with Joseph Kershner. In December, 1854, the money claimed in this action was collected of Elmer, and received by the defendant Wood, who had in the mean time become the assignee from the defendant Chamberlin, of all their claims against the plaintiff for legal services, and when called upon by the plaintiff to pay over the money so collected, declined to do it until these claims were adjusted. In November, 1849, an account for legal services, made up by the defendant Wood, was settled by the defendant Chamberlin. This account contained several items for services, &c. in the foreclosure suit against Elmer. No other proof was given by the plaintiff to show a joint retainer of the defendants in the foreclosure suit by the plaintiff, except that they continued to do business for him as Young & Wood had previously done. The defendant Chamberlin having been examined as a witness on the part of the plaintiff, the defendant Wood was examined in his own behalf, and testified that Chamberlin never had any thing to do with the foreclosure suit against Elmer, and that the plaintiff repeatedly told him that he did not wish him to have any thing to do with it.

This action was brought against Chamberlin & Wood, jointly, to recover the amount collected of Elmer in the foreclosure suit. The referee reported in favor of the plaintiff for the amount claimed by him, including interest and costs.

*O. Hastings,* for the appellants.

*Scott Lord,* for the respondent.

*By the Court,* JOHNSON, J. After a careful and deliberate examination of the questions involved in this case, I have come to the conclusion that the action cannot be maintained against the defendants jointly, upon the facts found by the referee. The defendant Chamberlin was not originally re-

Ayrault *v.* Chamberlin.

tained by the plaintiff, and had no connection whatever with the action, and no interest in it, until after it was brought and had been some time in.process. The attorneys employed by the plaintiff to collect the demand were the defendant Wood, and his then partner, the late Gov. Young. The action was commenced by them, and while it was pending, their partnership was dissolved, and a new one formed between the defendants. The defendant Chamberlin purchased Young's interest in the unfinished business, which included the action in question. The defendant Wood was the attorney of record, throughout. The defendants dissolved their partnership on the 1st of January, 1854. It does not appear, expressly, from the case, whether this was before or after the final decree in the action. On such dissolution Wood purchased Chamberlin's interest in that action. After final decree in the action, and on or about the 1st of December, 1854, the money in question was paid to Wood, the attorney of record, who immediately gave the plaintiff notice of its collection, but refused to pay it over on demand, claiming to have an account to a considerable amount against the plaintiff, and offering only to pay the balance after taking such account. While the defendants continued partners, the action was prosecuted by them for their joint benefit, in the name of Wood. The referee has found, as matter of fact, that the relation of attorney and client existed between the plaintiff and defendants in the continuance and prosecution of such action to final judgment. From this I infer that the dissolution of the copartnership between the defendants was not until after the final decree in the action, though I find nothing in the evidence, on the subject, one way or the other. It is not found as a fact, however, that the relation subsisted between Chamberlin and the plaintiff when the money was paid over to Wood, nor do I see how it could have been, from the evidence. The general rule is that the power and authority of an attorney by virtue of his retainer, ceases when final judgment is obtained, and that it continues after

Ayrault *v.* Chamberlin.

that, for certain purposes only. (*Ex parte Shumway*, 4 *Denio*, 258. *Jackson* v. *Bartlett*, 8 *John.* 361. *Lusk* v. *Hastings*, 1 *Hill*, 656.) After judgment is perfected in an action, the plaintiff may have his execution issued by any other attorney, without any substitution. (*Thorp* v. *Fowler*, 5 *Cowen*, 446.) Previous to judgment, however, no attorney, other than the attorney of record, can act in the cause without a regular substitution. (*Boeram* v. *Jerome*, 1 *Wend.* 293.)

I take it for granted that the decree was the ordinary decree of foreclosure; and also that the money was paid by the defendant therein, before a sale, as nothing appears respecting any sale under the decree. The money might as well have been paid to the plaintiff. It was not necessarily paid to the attorney of record. This, however, can make no difference, if the defendant Chamberlin was really retained by the plaintiff, and became in fact, and in law, one of his attorneys as to that action. If he became the attorney, with his partner Wood, in that action, by virtue of any new stipulation or agreement, between himself and the plaintiff, it would, I have no doubt, be equivalent to an original retainer. There would then be some privity of contract between the plaintiff and the defendants, and they might be jointly liable in an action for any moneys collected under the new retainer. But how is this? When an attorney is retained by a party to collect a demand by course of legal proceedings, the law implies a contract between them, by which the attorney on his part engages to use proper skill and dilligence, and to pay over all moneys which may come to his hands, from such demand, belonging to his client. The plaintiff retained Young & Wood to collect the demand in question. The agreement was between them. When the defendants entered into their partnership, this agreement was subsisting and in full force. Has it been in any respect changed? There is not the slightest evidence that the plaintiff ever released Young & Wood, or that Chamberlin ever assumed any of their obligations to him.

Merely purchasing an interest in the business, and entering into partnership with one of them, did not make him liable for their debts or obligations. Those still continued, against the old firm, and before Chamberlin can be charged upon their undertakings, a new agreement must be shown, sufficient in law to create the obligation. If he had come in, as a new partner into the old firm, he would not have been liable jointly with them, without an express promise. This is well settled. (*Story on Part.* §§ 152, 153.) The presumption of law is against the liability of the new partner, for the plain reason that there is a subsisting agreement in reference to the same matter, binding upon other parties. And before any one can be made answerable for the debt, default, or miscarriage of another who is already bound, he must have agreed in writing, in which the consideration is expressed. Chamberlin never in fact received the money. He came in while the action was in progress, and went out and transferred all his interest in the costs, nearly a year before the money was paid. Before he can be made liable, therefore, in such a case, it must be affirmatively shown that the new firm was in fact by some agreement, or understanding, to which the plaintiff was a party, substituted for the old one, in the action. This fact is not found, and there is no evidence on the subject. Indeed the evidence is all the other way. All that is shown is that the defendants claimed the costs, and some costs, in the progress of the action, were paid by the plaintiff. It does not follow from this, however, that there was any privity of contract between the plaintiff and the defendants as a new firm. Chamberlin had purchased Young's interest, and the defendants were legally entitled to the costs, at the time the claim was made, independent entirely of any substitution, or any change of the original undertaking, as between the plaintiff and the old firm. If the fact might have been inferred from the treatment of the matter between the parties, such inference of fact has not been drawn.

The referee has merely found that the relation of attorney

and client existed, up to the time of perfecting judgment. And I incline to the opinion that as respects Chamberlin there was a quasi relation, of that character, up to the time of the dissolution. He had an interest in the action, and I have no doubt that had this money come into the hands of the firm while he was a member, this action might have been maintained ; or an attachment might have been issued against him, in case of a refusal to pay it over. But that might have been, upon a new duty, or assumpsit, and without any implied antecedent agreement.

In *Platt* v. *Halen,* (23 *Wend.* 456,) the partner of the attorney of record was held to stand in the situation of a dormant partner. And in that case the two attorneys were partners, when the bill was filed in the name of one as attorney of record. Chief Justice Nelson thought the same point had been before decided by the court. If Stevens was a dormant partner in that case, it is certain that Chamberlin must have been in this action, as respects the plaintiff. And as a dormant partner coming in and taking an interest in an undertaking already in progress, where the parties were already standing in fixed and definite legal relations towards each other, and going out and disposing of his interest before such undertaking is entirely completed, he would not be liable for a default occurring after thus going out. No notice is necessary of a dissolution, in the case of a dormant partner, to protect him from demands originating after the dissolution. (*Story on Part.* § 159. 3 *Kent's Com.* 68.)

Here it is certain that the default occurred long after the defendants dissolved, and the interest of Chamberlin had entirely ceased. And as there is no evidence of any new retainer, or any agreement to substitute the defendants for the original attorneys, I think it follows as matter of law, that the relation of attorney and client was not subsisting, in respect to that action, in any manner or for any purpose, as between the plaintiff and the defendant Chamberlin, when the money was paid over to the defendant Wood. That such relation had

always existed, between the plaintiff and Wood, from the time of the commencement of the action, and was still existing when he received the money, is not questioned. It follows that the action cannot be maintained against the defendants. A new trial must therefore be granted, with costs to abide the event.

[MONROE GGNERAL TERM, December 7, 1857. *Johnson, T. R. Strong* and *Welles,* Justices.]