## Davis *vs.* Peck.

Where notes given by the defendant to the plaintiff as "receiver of the W. bank," for money lent by the latter upon checks signed by him as "receiver &c.," were indorsed by the plaintiff as "receiver &c.;" *Held* that by such indorsement the title to the notes was transferred to the plaintiff individually, and, *prima facie*, became vested in him; and that, in the absence of any proof to the contrary, the plaintiff was entitled to prosecute them in his individual character; he testifying, without contradiction, that these were individual transactions.

*Held, also*, that such notes having been received in evidence, with the indorsements, without any objection being made that the indorsements were not proved, or any point being taken on that account, the fact that the plaintiff had used money in his hands as receiver, in making some of the loans on the notes, was not sufficient to establish that they did not belong to him individually; especially where there was evidence to show that on a meeting between the parties in the presence of an accountant, for the purpose of having their accounts looked over &c., and a balance struck, the notes were presented by the plaintiff as an individual claim against the defendant, and were recognized by the latter, as such, without objection.

*Held, further*, that there was no error in allowing the plaintiff to be asked, when examined as a witness, whether one of the loans was an individual transaction; and whether he loaned the money as his own, or as receiver; those inquiries embodying a fact within the knowledge of the plaintiff, and not requiring the expression of an opinion upon the law of the case.

When an attorney is employed by a party, the law implies a contract between them; and before a new partner of the attorney can be made a party to such contract, there must be some agreement or understanding to place him in a position which will enable him to make a claim against the client, for services in the suit.

In the absence of any proof of such an agreement, or the substitution of the firm as the attorneys or counsel of the party, the relation of attorney and

54b    425
171 NY 3579

client does not exist between the firm and such party, with the assent of the latter; and consequently the attorney originally employed may recover for his services in the suit, in an action brought by him alone.

THIS action was tried before Wm. T. Odell, Esq., as sole referee. It was brought to recover the amount of certain promissory notes, executed by the defendant to the plaintiff, for money loaned by the plaintiff to the defendant upon his (the plaintiff's) checks, and for services rendered by the plaintiff for the defendant as attorney and counsel. Two of the notes are made payable to the order of the plaintiff, by the name and description of " George R. Davis, receiver of the Watervleit Bank," and three of the checks are signed " George R. Davis, receiver, &c." The plaintiff testified that the loan of the money upon these checks was an individual transaction between him and the defendant. The loan of all the checks, and their payment by the bank, was proved by the plaintiff. Neither of the loans was disputed by the defendant on the trial, except that of the $400 check. The plaintiff testified that the defendant held a note against one Gilbert for $200, which he turned over to the plaintiff, to be applied, when paid, upon the plaintiff's account against him, and the plaintiff left the note at his bank for collection. Afterwards, and before this note was due, the defendant applied to the plaintiff for a loan of $400, and was answered by the plaintiff that he had not so much money in the bank. The defendant then assured the plaintiff that this Gilbert note (calling it $250) would be paid, and he promised to deposit sufficient to make up the $400, and thereby induced the plaintiff to give him his check for the $400, which check was paid. The Gilbert note was paid, and a deposit made by the defendant in the bank, to the plaintiff's credit, of $151, September 20, 1851, and the check was paid on the 22d day of September, 1851. The Gilbert note and deposit together amounted to $351, thus leaving a balance of $49 due the plaintiff on this transaction. The plaintiff

testified that this check was loaned to the defendant on the 19th September, 1851. On the trial the defendant denied ever having received this check. The defendant testified to payments made by him to the plaintiff. These payments are all credited to the defendant in the statement made by Vanderheyden, except the one of $81 allowed on the plaintiff's claim for legal services. Jabez Gilbert, a witness for the defendant, testified that he did business with the defendant at Rome, Oneida county, on the 19th of September, 1851. He thinks the defendant came to his house, in Pulaski, the night before; stayed all night, and went to Rome the next morning. The defendant testified to the same thing, and that he went from Rome to Syracuse. It also appeared that in May, 1863, the parties got together to settle and strike a balance, so far as related to their money dealings; each made out a statement of his claims, and they went together to the house of Mr. Vanderheyden, a practical accountant, and employed him to compute the interest and strike the balance. Vanderheyden took from each a memorandum of his claim. The items presented by each party were acquiesced in by the other. The defendant did not object to any item of the plaintiff's claim, and this claim included the $400 check, and each of the other checks, as well as the notes above mentioned.

The referee found that the defendant gave notes to the plaintiff in his individual capacity; also, that on the 22d of October, 1849, the plaintiff loaned the defendant $342, and took his note payable to "George R. Davis, receiver of the Watervliet Bank," and that the plaintiff indorsed it "George R. Davis, receiver &c.," and that the plaintiff was the owner and holder of the note. He further found that on the 23d of January, 1851, the plaintiff loaned to the defendant $72 of money in the hands of the plaintiff as receiver of the Watervliet Bank, but as between the plaintiff and defendant it was an individual transaction.

That on the 25th of February, 1851, he in like manner loaned the defendant $333, from money in the plaintiff's hands as receiver, but it was an individual transaction as between the parties. That on the 22d of September, 1851, the plaintiff loaned to the defendant $400, by giving a check for that amount upon funds deposited by the plaintiff as receiver, in the Bank of Troy. In part payment of this, the defendant gave the plaintiff a note of one Gilbert for $200, and deposited to the plaintiff's credit as receiver $151, leaving due $49. That on the 6th of October, 1851, the plaintiff loaned to the defendant $150, and took his note payable to " George R. Davis, receiver of the Watervliet Bank," or order, which was indorsed " George R. Davis, receiver &c.," and that the plaintiff owns it in his individual capacity. The referee also found that the plaintiff had performed various professional services for the defendant, and among others, in an arbitration with Hiram Slocum, of the value of $500; that in the case between the defendant and Hiram Slocum the arbitration was commenced, and the plaintiff employed, while he was carrying on law business alone, but that before its termination the plaintiff had formed a partnership with William W. Whitman; but the larger portion of the services of the plaintiff in that case were performed before the partnership. The referee rendered a decision allowing the plaintiff to recover in his individual capacity for all the moneys loaned, and also for the fee of $500 in the Slocum arbitration. Exceptions were taken upon the trial, and to the referee's report, which are stated sufficiently in the opinion.

Judgment was entered, and the defendant appealed to the general term of the court.

*John H. Reynolds,* for the appellant, (defendant.)

*Beach & Smith,* for the respondent, (plaintiff.)

MILLER, J.   It is objected that the plaintiff was not entitled to recover the amount of the several notes payable to his order as receiver of the Watervliet Bank, and the sums loaned, for which checks were given by the plaintiff as such receiver, for the reason that he showed no title to them, and that they were the property of the plaintiff as receiver, and did not belong to him individually.

I am inclined to think that the objection is not a valid one, and that no error was committed by the referee in allowing these items.

As to the notes, it appears that they were indorsed by the plaintiff as receiver, and thereby the title to them was transferred to him.   This fact is apparent from the copies of notes and indorsements introduced in evidence, and the finding of the referee on this point, to which no exception was taken.   By the indorsements the title, *prima facie*, became vested in the plaintiff, and, in the absence of any proof to the contrary, the plaintiff would be entitled to prosecute them in his individual character.   They were received in evidence, with the indorsements, without any objection being made that the indorsements were not proved, or any point being taken on that account; and the fact that the plaintiff had used money in his hands as receiver in making some of the loans on the notes, would not, I think, of itself be sufficient to establish that they did not belong to him individually.   It may also be observed that there was evidence to show that they were presented by the plaintiff as an individual claim against the defendant, and were recognized by him as such, no objection being made on that account, on the occasion of the meeting of the plaintiff and defendant for the purpose of having their accounts looked over.   The referee has also found that the plaintiff held the notes in his individual capacity, and I am not prepared to say that the finding is not supported by sufficient evidence.

As to the checks, they were introduced as evidence of

the loans made, and although signed by the plaintiff as receiver, yet the testimony of the plaintiff shows—and there is nothing to contradict it directly—that they were individual transactions. It may well have been the case, that the amount drawn by him as receiver upon these checks was a portion of his fees, and actually belonged to him.

The parties seemed to consider the transaction as an individual matter, and it was so treated by both of them. There is certainly no evidence which establishes that the defendant in receiving this money considered that he was dealing with the plaintiff as receiver. Such a theory is also contradicted by the fact, that these, with other items of the accounts between the parties, were included in the statement made by Mr. Vanderheyden, to whom the accounts had been submitted for the purpose of being examined, and with a view of having a balance struck, at the request of both parties, and that there was no serious dispute in regard to them.

The allowance of the check of four hundred dollars is especially objected to upon the ground that it was never had by the defendant. I think it was properly allowed. The defendant swears that he never had the check, and that on the 19th of September, 1851, the day it bears date, he was not in Troy, but at Rome, in Oneida county. He is supported by the witness Gilbert, who testifies that the defendant was at Rome on the 19th, having, as he thinks, stayed with him the night previous. The plaintiff, on the other hand, testifies with great positiveness as to the loan of the money and the delivery of the check, and gives the particulars connected with the transaction, and states the manner in which it was to be paid. His recollection is sustained by a memorandum made by him at the time, containing a statement of the matter.

In addition, it appears that this was one of the items contained in the plaintiff's account left with Vanderheyden

to strike a balance, and that no objection was made to it by the defendant at the time when it was presented. Looking at probabilities, it is possible that the check may have been obtained prior to its actual date, thus rendering the proof as to the defendant's absence from Troy of no consequence.

But in any view which may be taken of the testimony, it is manifest that it was conflicting, and as it is not entirely preponderating in favor of the defendant, the finding of the referee is conclusive.

I also think there was no error in allowing the plaintiff to be asked, whether the loan of $400 was an individual transaction. Also in asking, whether the plaintiff loaned the money as his own or as receiver. Both of these inquiries embodied a fact within the knowledge of the plaintiff, and did not, I think, require the expression of an opinion upon the law of the case. The plaintiff, above all others, was in a position to know how the fact was.

I have had considerable hesitation whether the plaintiff was entitled to recover the five hundred dollars claimed for his services in the case between Slocum and Peck. The plaintiff was employed alone, and before the termination of the suit, but after a greater portion and nearly all the services had been rendered, he formed a partnership with another person. The evidence does not show that any part of the services were actually performed after the formation of the copartnership, and the plaintiff would clearly be entitled to recover for what services he did render personally prior to its formation. It is, perhaps, questionable whether the defendant should not have pleaded the nonjoinder of the plaintiff's partner, if he desired to avail himself of that fact. (*See* 31 *Barb.* 239.) But the contract as to the services was between the plaintiff and the defendant, and although the plaintiff subsequently took in a partner, I think that this fact alone did not affect the relationship previously existing between the

plaintiff and defendant. When an attorney is employed by a party, the law implies a contract between them; and before a new partner can be made a party to the contract, there must, I think, be some agreement or understanding to place him in a position which would entitle him to make a claim against the client who originally did not employ him. As there is no proof of any such agreement, or of the substitution of the firm as the attorneys or counsel of the defendant, I am inclined to think that the relation of attorney and client did not subsist with the new firm by the assent of the defendant, and therefore the plaintiff was entitled to recover for these services by virtue of his contract with the defendant. (*Ayrault* v. *Chamberlin*, 26 *Barb.* 83.)

I discover no error in any of the decisions made by the referee upon the trial, and I think the judgment should be affirmed, with costs.

HOGEBOOM, J. I am not quite satisfied, without further examination, as to the $500 for professional services in the Slocum case. Evidently a part of the amount belonged to Whitman, and I think such amount cannot be recovered by Davis. Peck swears he employed Davis and Whitman. Whitman swears they were employed. At first, thinks they were employed before arbitration commenced; afterwards seems to doubt about it. Davis swears most of the services were performed before the partnership. Assume that this is so, I think Davis could not alone recover for the residue, because the testimony shows that Peck employed or adopted both of them afterwards in the transaction. As the plaintiff has not made the matter clear, I incline to think he should consent to deduct $245, (and interest thereon,) which is $5 less than half of $500, or else that a new trial should be granted, and that neither party should have costs of appeal. Besides, were not both of the questions at folio 78 erroneously over-

Adee *v.* Demorest.

ruled? I incline to think so. As to the residue of the case, although the plaintiff has been pretty liberally dealt with, I do not know that there are legal objections on which we can set aside the report.

PECKHAM, J. I concur in affirming the judgment. There is no ground, in my judgment, whatever, for disallowing the plaintiff's fees for professional services in the Slocum case.

Judgment affirmed.

[ALBANY GENERAL TERM, March 4, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]