## ROGER S. SPERRY AND OTHERS, APPELLANTS, *v.* JAMES BALDWIN AND OTHERS, RESPONDENTS.

*Chattel mortgage — the proceeds of a sale made by the mortgagor, with the consent of the mortgagee, must be credited on the mortgage — when the consent of a prior mortgagee to a sale of a part of the goods by the second mortgagee does not require the amount received by the latter to be credited on the debt of the first mortgagee — when the mortgagor aiding in a sale of goods by a second mortgagee will be deemed to act as her agent and not as the agent of the first mortgagee — when the testimony of the mortgagee of his good faith is admissible.*

Upon the trial of this action, brought by the plaintiffs, judgment creditors of one Frank S. Hunter, to have two chattel mortgages, given by him upon his stock of goods, declared to be null and void, it appeared that at the time they were given Hunter was indebted to the defendants Baldwin, to whom one of the mortgages was given, in the sum of $8,261.66, and to the defendant Mary L. Hunter, his mother, to whom the other was given, in the sum of $5,000 and upwards, and that Mary L. Hunter had also become liable, as surety, to pay the debt due the Baldwins, and other debts owed by her son. The mortgage to the Baldwins contained a clause agreeing that in case the mortgagor sold any of the goods he should pay over the same to the Baldwins, and that he should not sell on credit, and the other mortgage contained a similar clause requiring the proceeds to be paid to the Baldwins until their debt should be paid and then to the mother. Three days after the mortgages were executed the mother took actual possession of the property and employed her son, the mortgagor, to aid in the sale of the goods, from which sale she realized the sum of $6,000. Before she took possession the mortgagor had sold goods to the value of sixty-eight dollars, which he retained for his own use, but without the consent or knowledge of the Baldwins. Thereafter the Baldwins took possession under their mortgage, and at the time of the levy of the execution, issued upon the judgments recovered by the plaintiffs, had realized thereon the sum of $3,633.68.

The referee found that the mortgage to the mother was fraudulent and void as to creditors, by reason of an oral agreement between the parties thereto authorizing the mortgagor to use the proceeds of the sale for his own benefit, but that the mortgage to the Baldwins was valid.

*Held,* that the sixty-eight dollars collected by the mortgagor, after the execution of the mortgage, should be applied in reduction of the debt due to the Baldwins.

*Conkling* v. *Shelley* (28 N. Y., 360) followed.

That as the Baldwins did not consent that Mrs. Hunter should take possession of the goods and sell the same and pay over the proceeds to them, and as the referee found that the mortgagor, in aiding her in the sale, acted as her agent and not as the agent of the Baldwins, the amount received by her should not be treated as a payment upon the amount secured by the Baldwin mortgage.

*It seems,* that, even if the mortgagee in a prior mortgage should expressly consent that a subsequent mortgagee might sell a portion of the property and apply the

proceeds on his mortgage, there is no rule of law that would make such an arrangement fraudulent, as against other creditors, or compel the first mortgagee to credit the sum realized on his own mortgage, on the demand of the unsecured creditors.

James Baldwin, one of the mortgagees, was asked, and against the objection and exception of the plaintiffs allowed to answer, the following question: "Did you have any intention to delay, hinder or defraud the creditors of Frank S. Hunter in taking the mortgage?"

*Held*, that the testimony was admissible for the purpose of repelling the charge of fraud in making the mortgage and to show that the mortgagees acted in good faith.

*Forbes* v. *Waller* (25 N. Y., 430); *Seymour* v. *Wilson* (14 id., 567); *Griffin* v. *Marquardt* (21 id., 121) followed.

APPEAL by the plaintiffs from so much of the judgment entered in Steuben county upon the report of a referee as dismissed their complaint and denied them any relief as against the defendants, James Baldwin, Henry Baldwin and Sarah Weatherly.

In October, 1883, Frank S. Hunter was doing business as a country merchant in the village of Jasper, in the county of Steuben, having a stock of goods of the value of $16,000. He was at that time indebted to the defendants, the Baldwins, in the sum of $8,261.66, and to the defendant Mary L. Hunter, his mother, in the sum of $5,000 and upwards for moneys loaned and advanced, and she had also become liable as surety to pay the debt due the Baldwins, and also for other debts which Frank S. Hunter owed other parties. On the eleventh of that month he made and executed to the Baldwins a chattel mortgage on his entire stock of goods and merchandise kept in his store, for the purpose of securing their indebtedness, the same containing a clause in the following words: "It is expressly agreed that in case said Hunter shall sell any of the goods, chattels or merchandise in said store or stock, he shall pay over the same to J. Baldwin & Company, to apply on said indebtedness and notes, and that he shall not sell on credit." On the same day he executed another mortgage to his mother, Mary L. Hunter, covering the same property, for the purpose of securing her indebtedness and her liabilities as security for him, and it contained this provision: "In case said Hunter shall sell any of said goods, chattels or merchandise in said stock or store, he shall pay over the same to J. Baldwin & Co., to apply on said indebtedness and

notes, and that he shall not sell on credit; and after J. Baldwin & Co. shall be paid in full the balance to be paid to Mary L. Hunter on said indebtedness."

The referee also found as a fact that, at the time the said mortgage was made and executed, there was an oral agreement made between the parties to the last mortgage, and not expressed in the body of the mortgage, that the mortgagor might sell from said stock for his own use and benefit, without applying the proceeds upon any of the indebtedness referred to in the said mortgage, and for that reason, and no other, the last-named mortgage, from its inception, was fraudulent and void against the creditors of Frank S. Hunter. As between the mortgagees in the respective mortgages, the Baldwin mortgage was regarded as the prior one, and was so held by the referee. The Baldwins did not take immediate possession of the mortgaged property; but three days after the mortgage was executed Mrs. Hunter, the second mortgagee, did take actual possession of the property, and employed her son, the mortgagor, to aid and assist her in the sale of the goods, from which she realized the sum of $6,000. During the time that the mortgagor remained in possession of the property he sold goods to the value of sixty-eight dollars, which he retained for his own use, but without the consent of the Baldwins. The referee found as a fact that the Baldwin mortgage was executed by the mortgagor and received by the mortgagee in good faith, for a valuable consideration, and without any intent to hinder, delay or defraud the plaintiffs, or any creditors of the said Frank S. Hunter; and no agreement in respect to the sale or management of said property or in respect to any transaction affecting the same, other than the terms expressed in the mortgage, was made between them, and that the same was taken for the sole purpose of securing their *bona fide* indebtedness; that the mortgage to Mary L. Hunter was given, upon a good and valuable consideration, to secure the actual indebtedness and liability expressed in the mortgage.

In March, 1884, the plaintiffs recovered three judgments against the defendants, Frank S. Hunter and Mary L. Hunter, in the aggregate sum of $1,607.45, $1,200 of which was upon indebtedness due from Frank S. Hunter and Mary L. Hunter, contracted previous to the giving of the mortgages; and on the second day of April

issued executions thereon and delivered the same to the sheriff of Steuben county, who levied upon so much of the mortgaged property as remained unsold.

At the time of the levy the Baldwins were in possession of the goods and had sold a portion of the same and realized thereon $3,633.68, leaving unpaid upon their indebtedness the sum of $3,882.58. This action was brought in aid of the plaintiffs' execution and the relief demanded was, that the Baldwin mortgage be declared null and void as against the property and merchandise upon which the plaintiffs had levied their execution; or that the defendants be compelled to account and to deduct all sums received from the proceeds of the sale of said mortgaged property upon their indebtedness, and that the mortgage be declared fully paid and satisfied. The judgment declared the Hunter mortgage fraudulent from its inception, and that the plaintiffs were entitled, as against that mortgage, to satisfy their execution out of the mortgaged property, but that their levy was a lien subordinate to the Baldwin mortgage.

*W. G. Cady,* for the appellants.

*A. S. Kendall,* for the respondents.

BARKER, J.:

The appellants claim that the evidence presented on the trial established facts from which it should be adjudged as a matter of law that the Baldwin mortgage was fraudulent and void as against creditors; and, also, as matter of fact, that the same was executed by the mortgagor and received by the mortgagees with the intent to cheat and defraud, hinder and delay, the creditors of the mortgagor. The agreement made at the time of the execution of the mortgage and inserted therein, that the mortgagor might sell the mortgaged property for cash and pay the proceeds over to the mortgagees to apply on their indebtedness did not render the same fraudulent in law. (*Brackett* v. *Harvey,* 91 N. Y., 220.) This provision was for the benefit and advantage of the mortgagees, and so far as the same favored the mortgagor in any respect it was not to the disadvantage of his other creditors. While the agreement contemplated that the goods should remain in the possession of the mortgagor, that fact

alone did not vitiate the security, if it appeared from the whole evidence that the transaction was not intended to cheat or defraud creditors. The conclusion of the referee that the mortgage was made and executed in good faith for a valuable consideration and without intent to hinder, delay or defraud the plaintiffs, or the other creditors of the mortgagor, is, we think, fairly sustained by the evidence. The fact that the mortgagor remained in the actual possession of the property after the execution of the mortgage, raised the legal presumption that the same was executed for a fraudulent purpose and such presumption became conclusive evidence of fraud, unless it was made to appear on the part of the mortgagees that the same was made in good faith and without any intent to defraud the creditors of the mortgagor. Perhaps the evidence would have justified a contrary conclusion, but the statute has made the question of fraudulent intent, in all cases arising under its provisions, one of fact and not one of law. The facts and the circumstances upon which the question of fraud was to be decided as a deduction from such facts were not in much dispute. The mortgagees' indebtedness was large in amount and the means taken to secure its payment were not unusual, and if free from the imputation of a fraudulent purpose was entirely lawful. It was proper and lawful for them to seek priority of payment of their debt, adopting legitimate methods to secure that end.

This court has the undoubted power to examine the evidence, with a view of forming a judgment upon the questions in issue between the parties, for the purpose of determining whether they are fairly disposed of by the referee; and if we do not concur in his conclusions of fact, and believe they are against the weight of evidence, to reverse the judgment and order a retrial. If the issue on the question of fraud had been tried before a jury, a case was made, beyond doubt, that would have required the trial court to submit the same to the jury for their determination; and if a verdict had been rendered sustaining the validity of the mortgage, the same would not be disturbed by this court on appeal. We are prepared, after a full consideration of the facts and circumstances of the case, to concur in the conclusions reached by the referee on this part of the case. The appellant also contends that there was a tacit understanding and agreement between the parties to the mort-

gage, entered into at the time of its execution, that the mortgagor might continue the business and sell the property and apply the proceeds to his own use, otherwise than by applying the same on the mortgagee's indebtedness. If this charge is maintained by the evidence, then, as a matter of law, the transaction was void and illegal. (*Southard* v. *Benner*, 72 N. Y., 424; *Brackett* v. *Harvey*, 91 id., 214.) The learned referee has specifically found that no agreement was made relative to the management of the property otherwise than as stipulated on the face of the mortgage. In this conclusion of the referee we also concur.

But the contention of the appellants does not end with a decision of the questions already discussed, and decided adversely to their views; but they also insist that other things were done and suffered to be done by the mortgagees, after the execution of the mortgage, which rendered the same void as matter of law. Before the second mortgagee took possession of the property the mortgagor sold goods to the amount of sixty-eight dollars, and applied the avails to his own use. This act on his part does not invalidate the security as to the other parties to the mortgage, for they never assented to the misappropriation; and the other creditors of the mortgagor are not injured by the unlawful diversion, for, as between the mortgagees and the other creditors, the law applies the money thus realized on the indebtedness secured by the mortgage and the creditors are not harmed in any degree.

Three days after the mortgages were executed Mrs. Hunter seized the goods and took possession of the same by virtue of her mortgage, and sold a large portion of the same, the avails amounting to $6,000, which is a sum greater in amount than the sum remaining unpaid on the Baldwin mortgage. The appellants contend that so much of that sum as is necessary for that purpose should be applied upon the Baldwin mortgage and the same declared fully satisfied.

This presents the most difficult of the many legal propositions which the appellants have presented for our consideration. It is conceded by the learned counsel for the respondents that the rule is as we have already stated it, that all the avails derived from a sale of the goods made by the mortgagor, as the agent of the mortgagees, should be applied as a payment on their indebtedness. By permitting the mortgagor to sell the goods for cash, and to pay the

proceeds over to them, they thereby constituted him their agent. So long as he acted in that capacity, and realized money derived from a sale of the goods, the same at once became the funds of the mortgagees; and the law applies the same on their indebtedness, whether the same was ever paid over to them or not. (*Conkling* v. *Shelley*, 28 N. Y., 360.)

A solution of the proposition under consideration depends upon a question of fact whether the mortgagor acted as the agent of the mortgagees in the prior mortgage, in making the sales after Mrs. Hunter took possession of the goods. If he, in fact, represented them then there can be no dispute but that the moneys so received should be, as a matter of a law, applied on their indebtedness. Mrs. Hunter took the actual possession of the property by virtue of her own mortgage and before the same had passed into the hands of the Baldwins under their mortgage. This fact the referee finds and the evidence fully sustains the conclusion. He also finds that the mortgagor thereafter acted as her agent and assisted in making the subsequent sales. The manner in which the business was carried on after that time and the use made of the moneys arising from the sales, indicate very clearly that he regarded himself as in the employ of his mother after she took possession of the property. All his acts after that event were outside of his authority as the agent of the mortgagees in the prior mortgage and hostile to the duties which he owed them. The second mortgagee was authorized to take possession of the property by the terms of her own mortgage, and her act in that respect was lawful and the mortgagees in the first mortgage were the only creditors who were in a position at that time to complain of her action.

It may be conceded that if they had consented that Mrs. Hunter might take possession of the goods and sell the same and pay over the proceeds to them, to apply on their indebtedness, then the law would regard the application as made whether the money was paid over or not. Such an arrangement would be plainly a sale of the goods on their account under their own mortgage. A mere passive submission on the part of the first mortgagees to the act of Mrs. Hunter in seizing the property and selling a portion of the same under her own mortgage and retaining the proceeds to apply on her own indebtedness is not sufficient, in and of itself, to charge them

with the amount of the avails thus realized. Such moneys, so far as they were retained by Mrs. Hunter, went to pay an honest indebtedness owing to her by the mortgagor. If the mortgagee in a prior mortgage should expressly consent that a subsequent mortgagee might sell a portion of the property and apply the proceeds on his mortgage we are not aware of any rule of law that would make such an arrangement fraudulent as against other creditors, or compel the first mortgagee to credit the sum realized on his own mortgage on the demand of the unsecured creditors. Such an arrangement could not injure the creditors at large for the property of the mortgagor is, by the arrangement, devoted to the payment of the mortgagor's debts and diminishes the amount due upon existing liens. So in this case, if the finding of the referee should be construed, as in effect a finding, that the Baldwins did consent that Mrs. Hunter might take and sell so much of the property as she did take and sell and convert into money and apply the proceeds upon her own indebtedness, we do not see that it would have the legal effect of diminishing the security of the prior mortgage to the same extent. It is but a simple agreement between the respective lienors how the avails of the property may be applied on their respective mortgages; if the Baldwins had been informed that the second mortgage was void for the reason upon which the referee declares the same fraudulent, a different question would be presented. The referee has not found as a fact, and refused so to find, that the Baldwins had knowledge of or consented to the use of any of the moneys by the mortgagor for his own use derived from the sales made by Mrs. Hunter. No state of facts, therefore, exist charging the Baldwins with any of the money derived from the sale of the property, which took place by virtue of the second mortgage. All the transactions which took place after the execution of the mortgage and the use and disposition which was made of the property were competent evidence for the purpose of establishing the plaintiff's allegation that the Baldwin mortgage was fraudulent in its inception, but they were not sufficient to make out a case as matter of law.

Some exceptions were taken to the reception of evidence received over the plaintiff's objections. James Baldwin, one of the mortgagees, was a witness for himself and for his co-defendants, and was

asked by their counsel the following question: "Did you have any intention to delay, hinder or defraud the creditors of Frank S. Hunter in taking the mortgage?" and he answered that he did not. For the purpose of repelling the charge of fraud in making the mortgage and to show that, so far as the mortgagees were concerned, they acted in good faith and without any intent to hinder or defraud the creditors of the mortgagor, the inquiry was competent. (*Forbes* v. *Waller*, 25 N. Y., 430; *Seymour* v. *Wilson*, 14 id., 567; *Griffin* v. *Marquardt*, 21 id., 121.)

The same witness was asked the following question: "Was there any agreement or understanding between you and Frank Hunter as to the selling of goods after the mortgage was given?" The plaintiff objected to the same as incompetent and immaterial, and the same was overruled and the plaintiffs excepted and the witness answered, "there was no agreement, nothing suggested." At the time this inquiry was made the plaintiffs had given no evidence showing that there had been any personal interview between the witness and Hunter after the mortgage was executed, but they had proved some facts, from which it might be implied that the witness had impliedly consented to the use of some of the money by the mortgagor for his own purposes. After the answer was received it was followed by another question in this form, "was there any consent on your part on that subject?" which was also objected to for the same reason, and they were overruled and the defendant again excepted and the witness answered, "No sir." We think that it may be fairly said, in view of the state of proofs at the time the evidence was received, that the purpose of the inquiry was simply to prove as a fact that there had been no personal interview or conversation between the witness and Hunter on the subject of the sale of the goods after the execution of the mortgage, and that it was not intended to call for the expression of an opinion by the witness upon the facts proved, and brings the case within the rule laid down in *De Wolf* v. *Williams* (69 N. Y., 621), which makes this class of evidence competent. (See, also, *Nicolay* v. *Unger*, 80 N. Y., 57.) The question does not indicate the state of facts, if any was in the mind of the counsel, upon which he sought to call upon the witness to give a construction as to their legal effect. To my own mind it is quite clear that the only purpose of the inquiry was to call for a

fact within the knowledge of the witness and not the expression of an opinion upon facts testified to by himself or by other witnesses, and such questions are, therefore, admissible. The question discussed is very near the border line, and if any doubt existed at the time the inquiry was made, as to whether the witness was expressing an opinion or intended to state a fact within his own knowledge, the plaintiffs should have, by cross-examination, drawn out from the witness more definitely what he intended to express by his answer, and if it were found to be incompetent to move to have the same stricken from the record. (*Sweet* v. *Tuttle*, 14 N. Y., 465; *Davis* v. *Peck*, 54 Barb., 425.) The other exceptions taken upon the trial have been examined, and we are unable to discover any error in the several rulings to which the exceptions relate.

The judgment should be affirmed with costs.

SMITH, P. J., HAIGHT and BRADLEY, J. J., concurred.

Judgment affirmed, with costs.