STINA M. OLSON *vs.* M. J. O'CONNOR, *et al.*

Opinion filed November 3, 1900.

**Evidence of Ownership—Opinion of Witness.**

It is not error, in the trial of an action to recover damages for the conversion of property, to permit witnesses who are personally familiar with the facts upon which the ownership of such property is based to testify directly to the ownership of the same, as a fact. The rule is otherwise where the facts constituting ownership are complex, or are not all within the knowledge of the witnesses, so that the answer as to ownership involves the opinion or conclusion of the witnesses.

**Facts on Which Conclusion is Based May Be Shown.**

Ordinarily a statement as to the ownership of property is a statement of fact, and in such cases a direct answer is admissible. Where, however, it is a mixed question of law and fact, and a witness has answered against the objection that the question calls for a conclusion, the error may be cured by a disclosure of the facts upon which the conclusion is based, either in direct or cross examination.

**Fraudulent Conveyance—Homestead—Married Woman's Separate Property.**

The plaintiff, who is a married woman, sues to recover the value of a quantity of grain taken from her by the defendants as the property of her husband. It was grown on land to which she had title. Defendants requested the court to instruct the jury that if they found that her husband had transferred the title of the land to her to defraud his creditors, and she knew that fact, the transfer was void. *Held*, that the instruction was properly refused, inasmuch as it appeared that the land was a homestead.

**Unintelligible Instructions.**

A certain instruction examined, and *held* not vulnerable to the objection that it is unintelligible and erroneous.

**Husband When Not Owner of Crops on Wife's Land.**

The fact that a husband gratuitously devotes his time and skill to the management of his wife's land and the conduct of her farming operations does not operate to vest in him the title to the crops grown thereon.

**Wife Owns Crops Grown on Her Own Land.**

Both the plaintiff and her husband testified that she owned the grain which was taken by defendants, and stated the facts upon which her ownership rested, namely, that she owned the land, and raised it in her own right. *Held*, that the court did not err in refusing to direct a verdict for the defendants on the ground that the evidence showed conclusively that plaintiff was not the owner.

Appeal from District Court, Grand Forks County; *Fisk*, J.

Action by Stina M. Olson against M. J. O'Connor, sheriff, and Andy Jones. Verdict for plaintiff. From an order granting a new trial, plaintiff appeals.

Reversed.

*John A. Sorley,* for appellant.

When the sheriff seized the property in dispute he took it from the possession of plaintiff, who told him that it was her property. He therefore cannot justify his seizure under claim and delivery process against her husband. *Welter* v. *Jacobson*, 7 N. D. 32, 73 N. W. Rep. 65; §§ 2766-2767, Rev. Codes. The common law presumption does not prevail that when property is found in the possession of a husband and wife that it is the property of the husband. *Bookman* v. *Clarke*, 79 N. W. Rep. 159; *Oberfelder* v. *Kavanaugh*, 45 N. W. Rep. 471. The separate property of a married woman is not liable for her husband's debts because he gratuitously devoted his time and skill to the management of it, and because part of it had been accumulated through the labor denoted by him. *Deere, Wells & Co.* v. *Brown*, 79 N. W. Rep. 59; *Carn* v. *Rogers*, 8 N. W. Rep. 629; *Webster* v. *Hildreth*, 33 Vt. 457; *Burleigh* v. *Coffin*, 22 N. H. 118; *Feller* v. *Alden*, 23 Wis. 301; *Hoagh* v. *Martin*, 45 N. W. Rep. 1058; *Russell* v. *Long*, 3 N. W. Rep. 75; *Lewis* v. *John*, 24 Cal. 98; *Heartz* v. *Klieubhammer*, 40 N. W. Rep. 826; *Hosfelt* v. *Dill*, 10 N. W. Rep. 781; *Duncan* v. *Kohler*, 35 N. W. Rep. 594.

*George A. Bangs,* for respondents.

Where ownership of personal property, as in this case, is a material and ultimate fact to be determined, and is controverted upon the trial, the witness should testify to the principal facts within his knowledge which bear upon the question of ownership, and not give his mere opinion and conclusion thereon. *Brown* v. *Bank*, 42 Pac. Rep. 593; *Erickson* v. *Sophy*, 71 N. W. Rep. 758; *Farmer* v. *Brohan*, 71 N. W. Rep. 246; *Watrous* v. *Morrison*, 14 South. Rep. 805; *Hite* v. *Stimmel*, 25 Pac. Rep. 852; *Smith* v. *Cohn*, 32 Atl. Rep. 564; *Montgomery* v. *Martin*, 62 N. W. Rep. 578; *Nicolay* v. *Unger*, 80 N. Y. 54; *Newins* v. *Rose*, 33 N. Y. Supp. 1131. Plaintiff claimed title by virtue of her ownership of the land. Plaintiff's husband owned the land when the mortgage, under which defendants justify, was given. The land was deeded to plaintiff to avoid a judgment lien, with the knowledge of plaintiff, and no consideration used in the transfer. The burden was on plaintiff to show that her husband retained sufficient property to pay his debts, else the transfer was void as to defendants. *Haufman* v. *Nolle*, 29 S. W. Rep. 1006; *Ware* v. *Purdy*, 60 N. W. Rep. 526; Waite, Fraudulent Conveyances, § 412; *Booher* v. *Worrill*, 57 Ga. 235; *Redmon* v. *Chandley*, 26 S. E. Rep. 255.

YOUNG, J. Action in conversion to recover the value of a quantity of grain. Plaintiff claims as owner, and alleges that the grain in controversy was raised by her in 1896, and upon land of which she was the owner. Defendants admit the taking, and quantity and value of the grain, but allege as a complete defense that the same was not the property of the plaintiff, but was owned by Albert G. Olson, plaintiff's husband, and that the same was taken by the defendant O'Connor, as sheriff of Grand Forks county, under and

by virtue of certain claim and delivery proceedings which were based upon a chattel mortgage thereon executed and delivered by the said Albert G. Olson, the defendant in said claim and delivery action, to Andy Jones, the plaintiff therein. Jones is joined as defendant in this action. Thus it will be seen that the case turns on the ownership of the grain in controversy. It is conceded that, if plaintiff's husband was the owner, then the taking by the defendants was lawful, and plaintiff cannot recover; and, on the other hand, if plaintiff was the owner, such taking was unlawful, and plaintiff is entitled to recover. The case was tried to a jury, and a verdict was returned in favor of plaintiff. The defendants moved for a new trial, and this was granted. Plaintiff appeals from the order granting a new trial, and assigns the same as error. The motion was based entirely upon errors of law occurring at the trial. Accordingly the order sustaining the motion must stand or fall upon the result of our review of the alleged errors. There is nothing in the record to indicate what particular grounds the court relied upon in granting the motion. We will, however, consider all that appear of substantial merit.

Counsel for respondents in his brief submits five propositions in support of the order granting a new trial. They are as follows: (1) Error in the admission of certain testimony; (2) error in the failure to charge, amounting to a misdirection; (3) refusing to charge as requested; (4) error in the charge; (5) refusal to direct a verdict. A brief statement of facts is necessary to a consideration of these alleged errors. The grain in controversy was grown in 1896 upon a quarter section of land, which was then, and for five years prior thereto had been, occupied by the plaintiff and her husband as their homestead. The title to the land was in the plaintiff at all times since it was purchased. It was purchased with money derived from the sale of their former homestead. The title to this former homestead was in plaintiff when sold, and for four years prior thereto. Originally the title to it was in her husband. It appears that he transferred the title to her about the time a certain judgment was rendered against him, in favor of the Sandwich Manufacturing Company, in the District Court of Grand Forks county. On June 23, 1896, the defendant Jones secured the issuance of an execution on said judgment, and in company with a deputy sheriff visited plaintiff's residence and took steps towards making a levy. No levy was made, however. Instead, the defendant Jones and the deputy sheriff induced plaintiff's husband to accompany them to Grand Forks, and there, at the solicitation of defendant Jones, Olson executed the note and chattel mortgage in favor of Jones, which have been referred to, as the basis of the claim and delivery proceedings, covering the crop then growing upon his wife's land. The plaintiff was not present when the mortgage was executed. Neither did she authorize or ratify its execution. Olson testifies that he protested against giving the mortgage on the ground that the property was his wife's, and this is corroborated by the

scrivener who drew the chattel mortgage. Jones himself says that he had difficulty in getting him to sign a mortgage for so large an amount, and that Olson stated that the real estate was not his, but belonged to his wife, but did not say the chattel propery was his wife's, and did say that the crop was his. This latter statement is opposed to the testimony of both Olson and the scrivener. The fact is not disputed that the plaintiff had the apparent legal title to the land upon which the grain in question was grown. It is also one of the undisputed facts in the case that the plaintiff and her husband, with their children, resided on this farm at all times here in question, and that the grain involved in this action was grown upon this land. As to the ownership of the grain, plaintiff testified that she owned the land, and that the grain was raised under her direction and control; that the actual labor was done by her husband, their son, and hired men; that most of it was done by her husband, who generally marketed the grain and brought her the money; that he usually made the purchases for the farm; that all disbursements were made by her, directly or through her husband, acting for her and at her request; that this was also the general method upon which she had conducted her farming operations for the nine years that she had title to the lands upon which they lived. Olson's testimony is to the same effect.

With these preliminary statements, we turn to the consideration of the errors upon which respondents rely to support the order granting a new trial. The first relates to rulings admitting answers to the following questions propounded to plaintiff in redirect examination: "(1) Q. For whom did Albert Olson work in 1896? (2) Then you are controlling and running the farm? (3) Q. Whose grain was it, raised there in 1896?" And this question asked of Albert G. Olson in his direct examination: (4) Q. You may state who was the owner of the crop?" The objection to each question was that it was incompetent and called for the conclusion of the witness, and counsel contends that the overruling of such objections was error. The first two of the above questions so clearly call for statements of facts, and not conclusions, that they do not require extended notice. Plaintiff's answer that her husband worked for her, and that she ran the farm, was a statement of fact, purely, and in no particular rested upon her opinion or inference. The other two questions call for a direct statement as to the ownership of the grain in controversy. Counsel's contention is that the answers to these questions were merely expressions of the opinions and conclusions of the witnesses, and were therefore objectionable, and he urges the governing rule that "when ownership is a material and ultimate fact to be determined in an action, and is controverted upon the trial, the witnesses should testify to the principal facts within their knowledge which bear upon such question, and not give their mere opinions and conclusions thereon." The rule as thus stated by the Court of Appeals of Kansas in *Brown* v. *Bank*, 42 Pac. Rep. 593, is in harmony with the current of authority. *Farmer* v. *Brokaw*,

(Iowa) 71 N. W. Rep. 246; *Simpson* v. *Smith*, 27 Kan. 565; *Hite* v. *Stimmel* (Kan. Sup.) 25 Pac. Rep. 852; *Montgomery* v. *Martin* (Mich.) 62 N. W. Rep. 578; *Bahe* v. *Baker*, 44 Ill. App. 578; *Nicolay* v. *Unger*, 80 N. Y. 54. Undoubtedly the foregoing authorities correctly state the rule where the answer of a witness as to ownership involves his construction of facts or his conclusion as to what they establish. In such cases it is erroneous to permit witnesses to testify to the ultimate fact of ownership, and by so doing compel the jury to return a verdict upon the opinions and conclusions of the witnesses, instead of the primary facts upon which ownership is based. But it is also the unanimous voice of these authorities that where the answer as to ownership is direct, but is subsequently qualified by a statement of the facts relative to it, or tending to show such ownership, and discloses the facts upon which the answer is based, the error is cured, and is not ground for reversal. The reason for this, as stated in *Nicolay* v. *Unger, supra,* is that "defendants would receive all the advantage which would flow from the evidence given in regard to what transpired between the parties, and it would not add to its weight or increase its effect by proof of the conclusion of the witness." *Steele* v. *Benham*, 84 N. Y. 639; *Miller* v. *Railway Co.*, 71 N. Y. 380. So if it was conceded that the questions objected to in the case at bar did in fact call for the conclusions of the witnesses, and not statements of fact, purely, we nevertheless would be compelled to hold that the error was not material, and furnished no ground for granting the motion; for it appears in the record that counsel for defendants by a prolonged and searching cross-examination developed every fact which could in any way bear upon the question of ownership, and plaintiff's claim thereto. But we are agreed that in this case, under the facts as they appear, these questions did not call for an opinion, but a statement of a fact, simply, and therefore come under the rule that where the question involves a fact clearly within the knowledge of the witness, and not the expression of an opinion upon facts proven, such question is admissible. *DeWolfe* v. *Williams*, 69 N. Y. 621; *Knapp* v. *Smith*, 27 N. Y. 277; *Sweet* v. *Tuttle*, 14 N. Y. 465; *Davis* v. *Peck*, 54 Barb. 425. In *DeWolfe* v. *Williams*, supra, the question objected to was this: "Whose was the property in the house at 516 Pacific street?" This was objected to "as a question of law." The objection was overruled, and witness answered that it was hers. The court held "that the question and answer were proper; that the title to property was ordinarily a simple fact, to which a witness having the requisite knowledge could testify to directly." In *Davis* v. *Peck*, 54 Barb. 425, the question involved was whether the plaintiff made a certain loan as receiver or individually. It was held that it was not error to permit him to answer in which capacity he acted. The court said that the inquiry embodied a fact within the knowledge of the plaintiff, and did not require the expression of an opinion on the law of the case. He, above all others, was in a position to know what the fact was. In *Knapp* v. *Smith*,

supra, which is in many respects similar to the case at bar, a wife, who was the plaintiff in the action, was asked this question: "For whom did your husband do what business he did after you took the deed?" This was objected to as calling for a legal conclusion. Her answer was: "I expected he was doing it for me." The court said: "Legal considerations may, no doubt be involved in a question of agency. But prima facie the inquiry whether a person engaged in a particular employment was doing business on his own behalf, or as the agent of another, involves only the question of fact whether he had been employed by that other person, and it is therefore a competent question to put to such person." In the case now under consideration the question of ownership was not a mixed question of law and fact. It rested upon two precedent facts, namely, that plaintiff owned the land, and that she herself produced the grain in controversy on said land. These facts were peculiarly within the knowledge of both the plaintiff and her husband, and when they testified that the plaintiff was the owner of the grain they did not give a conclusion or an opinion, but stated a fact within their knowledge. If these precedent facts were true, it conclusively followed that she owned the grain, and her ownership was a fact, and it was competent for her to so testify, subject to cross-examination, of course, as to the existence of the precedent facts. This case is not to be confounded with those where the answer of a witness does in fact involve the expression of an opinion or his conclusion or legal inferences. In such cases the objection urged would be proper. But in this case both witnesses knew who owned the land and who raised the crop, and could state from their own knowledge therefrom who was the owner of it; and this not as the statement of an opinion, but of a fact. And the test always is whether the answer calls for an opinion or a fact. The peculiar facts of each case must determine the rule to be applied. The one most generally applicable in actions for conversion is that stated in Abb. Tr. Ev. 623. It is this: "A witness may testify, directly, in the first instance, who owned the property, if he can do so positively, and not as mere opinion." The court did not err in admitting the evidence complained of.

The specification of errors as to the instructions may be treated under two heads: The first, failure to charge as requested; the second, error in the instructions given. Counsel for defendants asked the court to instruct the jury that if they found that the transfer of the land by Albert G. Olson to his wife, the plaintiff herein, was made to defeat the claim of the defendant, and that plaintiff had knowledge of such intent, then such transfer was void and conveyed no rights to her, and the defendant would in that event stand in the same position towards the grain in controversy as though no transfer had been made. Other requests similar in nature were asked. All of them were refused. And we are entirely clear that the court properly refused them, for there are no facts in the case calling for such instructions. In the first place, there never was a transfer of the title of the land on which this crop was grown from

Albert G. Olson to the plaintiff. Olson never had title to it. It belonged to her from the date it was purchased. The only transfer made was nine years before. But that was his homestead, and was exempt. It was property to which the lien of the judgment did not attach, and was beyond the reach of an execution issued thereon. It was not possible to defraud his creditors by transferring the title to his wife, for it was property to which they could not look for the collection of the claims. For these reasons, even in a proper case the transfer was not subject to attack. Counsel does not contend to the contrary. In fact, it is conceded that, so far as the actual title to the land is concerned, it is not vulnerable to assault because made in fraud of creditors; but, counsel contend that such transfer is void for the reason and to the extent that it affects the title to crops thereafter grown on such land, because to that extent, he says, it tends to hinder and delay creditors in the collection of their debts. Briefly, counsel's position is this: If Olson had not transferred the title to the land, he, and not plaintiff, would have been the owner of the grain subsequently grown thereon. As a statement of fact, this is true; but as a ground for claiming that the transfer of the land was in fraud of creditors, it is not sound. Its fallacy lies in falsely assuming that the transfer of the title then and there conveyed something of value other than the land itself, namely, the crops subsequently grown. Of course, Olson transferred to plaintiff nothing more than he had then, and that was the land itself. At that time these subsequent crops had no existence of value. By transferring the land to his wife he did not transfer crops afterwards grown. They were subsequent creations, which plaintiff claims she herself produced. Counsel's contention is equivalent to saying that under proper conditions property may be transferred by a debtor, and such transfer shall not be subject to attack as a fraud upon creditors, and in the same breadth declaring that the person obtaining it must not use it or profit by it. This proposition has no support in any principle known to the courts. The instruction requested was properly refused.

The following instruction given by the court was excepted to by defendants, and specified as error in the motion for new trial: "If from all the evidence in the case you believe that the plaintiff and her husband conspired together to defeat the payment of this mortgage by claiming that said property belonged to the plaintiff, when in truth and in fact it belonged to her husband, and that he in fact cultivated said land and raised said crop for his own use and benefit, and that he worked said land and raised said crop in his wife's name in pursuance of such collusive arrangement, then in that event your verdict should be for the defendant." Respondents' counsel criticises this portion of the charge as unintelligible, and also claims that it is erroneous. We do not think it is open to either objection. It was applicable to the evidence before the jury for consideration, and states the law entirely favorable to the defendants. If open to criticism at all, it is that it is too favorable to

them. By this instruction the jury were required to find for the defendants if they should find that plaintiff's husband cultivated the land and raised the crop for his own use and benefit. To reach this conclusion, it was necessary for them to find that the claim of the plaintiff and her husband, that the crop was hers was false and collusive, and the court correctly states that this was essential before a verdict could be found for defendants. Inasmuch as the plaintiff owned the land and was entitled to its use, the crops, presumptively, were hers. The right of her husband to crop the land, if it existed, must of necessity have been founded on a transfer of such right to him by the plaintiff in some form which the law would recognize as having that effect. The law applicable would have been more correctly stated if the court had instructed the jury that if they found from the evidence that plaintiff's husband had obtained from plaintiff the right to use the land for the cropping season of 1896, and had produced the crop thereon for his own benefit and on his own account, then he, and not the plaintiff, was the owner thereof, and the verdict must be for the defendants. The failure of the court to require the jury to find that Olson had a right to the use of the land for cropping purposes rendered the charge extremely favorable to the defendants.

The remaining error relied upon is the refusal of the court to direct a verdict for defendants. The ground of the motion was that plaintiff had failed to show that she was the owner of the grain, or that she was either in possession or entitled to possession. There are two particulars in which defendants claim that plaintiff failed. The first is that the evidence shows conclusively that she was not the owner of the land. This feature of the motion is based wholly upon the theory that the transfer of title by her husband was in fraud of creditors, and therefore void. This, as we have seen, is not tenable, and requires no further notice. The second ground is that the evidence shows conclusively that she did not cultivate the land and raise the crop. We do not so read the evidence. Both plaintiff and her husband testify that the crop was grown under her direction and control. It is true that plaintiff stated that her husband attended to practically all business details, and it appears, also, that he did most of the work on the farm, without compensation other than his living. But the mere fact that he devoted his labor and time to producing the crop, and did this gratuitously, has no legal efficacy to vest the title of such crop in him. The existence of the marriage relation did not remove the right to manage and control her own property which she had as a single woman. Section 2767, Rev. Codes, provides that "the wife after marriage has with respect to property, contracts and torts the same capacity and rights and is subject to the same liabilities as before marriage. * * *" It is now so well settled that the gratuitious contribution of a husband's time and skill to the management of his wife's property creates no title to its profits or increase in him, that the question is no longer debatable. See *Hearts* v. *Klinkham-*

*mer* (Minn.) 40 N. W. Rep. 826; *Duncan* v. *Kohler* (Minn.) 34 N. W. Rep. 594, and *Deere, Wells & Co.* v. *Bonne* (Iowa) 79 N. W. Rep. 59, and numerous authorities cited. It is clear that the trial court properly refused to direct a verdict for the defendants, and to have done so would have constituted reversible error. Our review of the record upon which the motion was based shows no error. It should have been denied. The District Court is accordingly directed to enter an order vacating its order granting a new trial. All concur.