MEYER & CHAPMAN STATE BANK v. FIRST NAT. BANK OF CODY. *

(Circuit Court of Appeals, Eighth Circuit.   January 24, 1918.)

No. 4758.

1. APPEAL AND ERROR ⬅211—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—DISMISSAL.

Where the court, without any intimation which would enable either party to anticipate such a termination on its own motion, at the close of plaintiff's case, entered judgment for defendant, dismissing the complaint on the merits, plaintiff may secure review of the dismissal, though it had made no request for findings of fact and a declaration of law in its favor.

2. BANKS AND BANKING ⬅114—ACTS OF CASHIER—LIABILITY OF BANK THEREFOR.

Where the cashier of defendant bank represented to plaintiff, who had previously rediscounted paper for defendant, that a note was part of the assets of the defendant, and plaintiff discounted the note, defendant, having received the proceeds, cannot escape liability on the ground that the note did not in fact belong to it.

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by the Meyer & Chapman State Bank, a corporation, against the First National Bank of Cody, a corporation. At the conclusion of plaintiff's case the court entered judgment in favor of defendant, dismissing the complaint, and plaintiff brings error. Reversed, with directions to grant new trial.

"This was an action by the plaintiff, Meyer & Chapman State Bank, against the defendant, First National Bank of Cody, to recover $10,000 as for money loaned. It was tried to the court without a jury, pursuant to written stipulation. At the conclusion of plaintiff's case the court entered judgment in favor of defendant, dismissing the complaint upon the merits. Plaintiff brings error. Plaintiff insists that it was entitled to judgment upon the uncontroverted facts. This requires a full statement of the evidence.

W. J. Deegan was defendant's cashier. He had been accustomed to obtain rediscounts of paper held by his bank, both by the plaintiff, the Meyer & Chapman State Bank, and by Mr. Chapman, its president. On May 5, 1913, he wrote a letter to Mr. Chapman, personally, signed by himself, as cashier, on the letter head of his bank, inclosing a note of $10,000, executed by Aaron Holm to the Holm Transportation Company, dated May 1st, due in 6 months, secured by 200 shares of the stock of the Holm Transportation Company as

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied May 10, 1918.

collateral. The note was indorsed by the payee. In the letter he expressed his wishes as follows:

"I have no disposition whatever to 'ride a willing horse to death,' but this loan is larger than we are allowed to carry, and should you feel that you could not carry this, in addition to what you are now carrying, you might return any of the notes that I have previously sent you, or such portion thereof as you felt was necessary to make up the amount of this one. * * *

"There is not much possibility that this loan would be taken up at its maturity, but the interest would be paid and a note furnished at that time, and in fact it would probably be about 18 months before this loan would be entirely taken up, and I would guarantee the payment of the principal at that time, and the interest at the end of every 6 months period.

"This would make a little more permanent investment than the notes I have sent you, and, so far as the security is concerned, I think it is absolutely good.

"If this would be agreeable to you, you might make the remittance to the Merchants' National Bank, as usual, and I will agree not to send you any more paper, as I feel now that I am crowding the limit, and exceeding anything that I expected to ask for at the time I was talking to you."

A few days after this letter was received, namely, May 8th or 9th, Mr. Chapman called Deegan by phone, and stated that he personally had no funds to invest, but that the plaintiff, Meyer & Chapman State Bank, had the money. Deegan then said, "I do not think we will need this money over 30 days." Mr. Chapman said that would suit him much better and that the plaintiff bank would make the loan for that time. Mr. Deegan confirms this conversation, and says, in answer to a question as to what he stated to Mr. Chapman as to how long the money would be required, "I told him probably not to exceed 30 days." As the result of this conversation, and immediately following it, Mr. Chapman, as president of the plaintiff bank, took the letter, the note, and the collateral to Mr. Alden, plaintiff's cashier, and told him "we would let the First National Bank of Cody have the money," and to place it in the Merchants' National Bank of Billings for the First National Bank of Cody. On May 9th plaintiff's cashier wrote the Merchants' National Bank of Billings as follows: "Please charge our account ten thousand dollars ($10,000), and credit the same to the account of the First National Bank of Cody, Wyoming, and oblige." At the same time he sent notice to defendant that he had caused this credit to be given.

On May 12th the cashier of the Merchants' National Bank of Billings wrote the First National Bank of Cody as follows: "We are crediting your account $10,000, this amount having been remitted by Meyer & Chapman State Bank, Red Lodge, for your credit."

The $10,000 credit given defendant by the Merchants' National Bank of Billings was drawn out between May 12, 1913, and June 24, 1914, so that on the latter date the account was overdrawn $810.49. These are the uses made of the credit:

"In two cases currency was remitted to the First National Bank of Cody; in two cases funds were remitted to the United States National of Omaha for the credit of the First National of Cody; in one case, for interest on a demand note; in one case, in payment of a collection; in one case, exchange charges; and in all other cases, the exchange of checks upon Cody, Wyo., which were sent them and charged to their account in the usual course of business."

This is the testimony given by the cashier of the Merchants' National Bank of Billings as to the manner in which the fund was used.

Mr. Deegan was an officer of the Holm Transportation Company, and interested in its affairs. In explanation of "how he happened to get that note," he testified on cross-examination by defendant as follows:

"A. I got that note at the office of the Holm Transportation Company and I remitted it from my own office; that is, I sent—I naturally took it there to remit it.

"Q. You didn't get it out of the property of the bank? A. No, sir.

"Q. It never was the property of the Cody National Bank? A. No, sir.

"Q. It was never discounted at the Cody National Bank? A. No, sir.

"Q. And was given to you by the Holm Transportation Company to forward to Mr. John Chapman? A. Yes, sir.

"Q. It was never a part of the property of the First National Bank of Cody? A. It never was."

The evidence showed that the loan had not been paid, except an installment of interest. The bill of exceptions shows that the trial commenced on April 5, 1916. There was an adjournment at noon, and in the afternoon considerable testimony was taken on behalf of plaintiff. The findings and judgment all bear date on April 5th, so we conclude that the entire trial was commenced and completed on that day. Objection had been made by counsel for defendant to numerous exhibits that were offered in evidence by plaintiff, and the court reserved its ruling. Immediately upon plaintiff's resting its case, the court rendered the following decision, without any motion on behalf of either party, but of the court's own motion:

"The Court: Mr. Enterline, you have not established your case. I will overrule the objection made this morning to Exhibit No. 1, and admit that, and admit all the correspondence, and the evidence, and taking it altogether it shows beyond all question to my mind that in the first place there is no guaranty by this bank, whatever your remedy may be against Mr. Deegan. Mr. Deegan was your witness, and went on the stand, and swore positively, and the testimony stands before the court uncontradicted, that this note and the securities given with it as collateral were never the property of the First National Bank of Cody. The First National Bank of Cody never paid the interest. The interest was paid by the Holm Transportation Company, he testified, and the bank book shows that the Holm Transportation Company was credited with the full amount of this note. So by your own testimony you have made, I think, a complete defense for the First National Bank of Cody.

"Without discussing it further, and without arguing it, I will overrule the objections to the exhibits you have offered, and admit them, and direct a judgment to be entered for the defendant."

So far as the record shows, neither party had any reason to expect this sudden disposition of the cause. Neither party had presented any requests to the court, and, as the court had not signified its intention to render its decision, there was no opportunity for the plaintiff to present any requests for findings of fact or declarations of law in its favor.

W. L. Walls, of Cody, Wyo., and E. E. Enterline, of Billings, Mont., for plaintiff in error.

William A. Riner, of Cheyenne, Wyo., for defendant in error.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

AMIDON, District Judge (after stating the facts as above). [1] It is first objected by defendant that this court cannot consider any question of fact, as there was no request by the plaintiff for findings of fact and a declaration of law in its favor as foundation for an exception. Such would be the rule under ordinary circumstances. Security National Bank v. Old National Bank, 241 Fed. 1, 154 C. C. A. 1; Felker v. First National Bank of Cincinnati, 196 Fed. 200, 116 C. C. A. 32. But upon the peculiar facts of this case we do not think the rule is applicable. The case was suddenly terminated on the court's own motion, without any reason, so far as the record shows, for either party to anticipate such a termination, and without any opportunity to counsel to present requests, and judgment was immediately entered upon the same day in accordance with this decision. Upon such a state of facts we think the case must be treated the same as it would be if plaintiff had presented requests for findings of fact and a declaration of law in its favor, and reserved a proper excep-

tion to their denial. We are the more ready to do this because there is really no essential conflict in the evidence.

[2] Upon the merits we think the evidence shows without substantial conflict that plaintiff loaned the defendant $10,000 for 30 days upon the security of the Holm note with its collateral. Defendant applied that money to its own use, and has never repaid it. It is not important whether the Holm note was in fact the property of defendant. The question is: How did defendant's cashier present the matter to plaintiff at the time the loan was made? The evidence clearly shows that he represented the paper as a part of the assets of defendant's bank, and that he offered it as collateral for a loan to his bank. Defendant cannot escape the repayment of money, which it received and used, upon a showing that the note which it offered as collateral to the loan in fact did not belong to it. Whether that was so or not, the loan was certainly made to it. It received the money and used it upon a promise to its cashier to repay it within 30 days. That it has failed to do, and, upon the evidence before the court, the plaintiff was entitled to recover.

The judgment is reversed, with directions to grant a new trial.