[APRIL TERM, 1919.]

## CHAPMAN v. FIRST NATIONAL BANK.
(No. 920; Decided June 2nd, 1919; 181 Pac. 360.)

CONTINUANCE — ABSENCE OF WITNESS — FAILURE TO SUBPOENA — PROMISE OF WITNESS TO APPEAR—CONVERSION—OWNERSHIP OF NOTE—EVIDENCE—CONCLUSION OF FACT—BANKS AND BANKING—AUTHORITY OF CASHIER—NOTICE TO THIRD PERSON—ATTITUDE OF THIRD PERSON TO INQUIRY—COMMERCIAL PAPER—COLLECTIONS.

1. It was not error to refuse a continuance, under Comp. Stat., 1910, Sec. 5139, applied for on the ground of the absence of a witness residing in another state, where defendant had relied on his promise to attend and made no effort to secure his testimony by deposition or his attendance by legal process.

2. In an action by a partnership, the payee of a note, for its conversion, the mere fact that it had been indorsed to one of the partners was not sufficient to overcome testimony of such partner and the cashier of the partnership that the note belonged to the partnership at the time of the conversion, in view of Comp. Stat., 1910, Secs. 3349, 3188; there being no showing of delivery.

3. Testimony of a partner and a cashier of the partnership that a note indorsed to the testifying partner by the partnership belonged to the partnership was not a mere legal conclusion at variance with the note itself and the indorsement thereon, being a fact within the personal knowledge of the witnesses.

4. In an action by the owner of a note and mortgage against a national bank for conversion of a note and mortgage by its cashier, the owner having been induced to send the note and mortgage to the cashier by his letter indicating that they would be paid from the proceeds of a loan he was negotiating for the mortgagor, a statement in the letter

by the cashier that "we are negotiating a real estate loan" for the mortgagor, did not necessarily imply that the bank was intending or expecting to make the loan direct, or with money under its control, so as to give notice to the owner that an illegal loan, that is, one prohibited by the National Banking Act, was contemplated, and thus charge him with knowledge of want of authority of the cashier to act for the bank in requesting him to send the papers to the bank.

5.   The owner of a note and mortgage is not bound to inquire concerning the security to be taken by a national bank desiring to advance money to take up the note and mortgage and hence is not required to inquire concerning authority of the cashier to request sending of note and mortgage to the bank.

6.   The acceptance of commercial paper for collection by a banking corporation is a well settled incident of the banking business, and a bank is liable in case it fails to perform its duty in making collection.

7.   A cashier of a national bank has authority to accept for the bank notes and mortgages for collection.

8.   The cashier of a bank is generally its chief executive officer and its general agent in the transaction of its legitimate business, and a bank is bound by his acts in the absence of notice to persons dealing with the bank of any restriction upon the authority of its cashier.

ON REHEARING ·

9.   In a suit by partnership for the conversion of a note alleged to belong to the partnership, the existence of an indorsement by the partnership to an individual partner, without evidence of delivery to the indorsee, held not sufficient to disprove possession and ownership by the partnership as against direct evidence; Comp. Stat., 1910, Sec. 3174, not applying.

APPEAL from District Court, Park County; HON. E. C. RAYMOND, Judge.

Action by John W. Chapman, as surviving partner of the co-partnership of Meyer & Chapman, against First National Bank of Cody, et al. From a judgment for plaintiff, defendants appeal.

*Collins, Campbell & Wood* and *J. H. Van Horn,* for appellants.

Plaintiff and respondent failed to prove that Meyer & Chapman were the owners of the note, which is an essential element of their case. (DeClark v. Bell, 10 Wyo. 1-7, 38 Cyc. 2044.) The note had been endorsed to John W. Chapman. He, Chapman, was the owner of the note within the provisions of the negotiable instrument law. (Sections 3188, 3192, and 3207, Comp. Stats.) The title and ownership was not in Meyer and Chapman at the time of the alleged conversion; defendant's motion for non-suit should have been granted; the most that could be claimed for the endorsement by Chapman was that it passed an equitable title, whereas a legal title was necessary to maintain the action. (Capitol Hill Bank v. National Bank of Rawlins, 160 Pac. 1171-1180.) There was no evidence that the note was in possession of Meyer & Chapman, when sent to Deegan at Cody. The testimony of Chapman that the note belonged to the co-partnership was incompetent and a mere legal conclusion and a direct violation of the terms of the instrument upon which the action was brought. (Ward v. Shirley, 32 So. 489; Pichler v. Reese (N. Y.), 64 N. E. 441.) It was not shown that Deegan had authority to represent that defendant bank was negotiating a mortgage or to solicit the release of mortgage from Meyer & Chapman. National banks are prohibited by law from making loans on real estate. (U. S. R. S. 5136. Union National Bank v. Mafthews, 98 U. S. 621, 25 L. Ed. 188; National Bank of Genesee v. Whitney, 103 U. S. 99, 26 L. Ed. 443.) One dealing with a corporation may rely upon an agent's authority to act upon matters within the apparent scope of his authority only, where the act is within the power of the corporation. It will never be presumed that an agent is authorized to do an illegal act. (Thompson on Corporations, 2nd Ed., Par. 1695 and 1532; Grow v. Cockrill, 63 Ark. 418, 36 L. R. A. 89; State Bank of Moore v. Forsyth, 41 Mont. 249, 108 Pac. 914; 28 L. R. A. N. S. 501; 31 Cyc. 1567 and 1568; 7 Ruling Case Law, Corporations, Par. 616; 3 Ruling Case Law, Bnks., Par.

71 ; Fairchild v. Southport ('Conn.), 67 Atl. 471 ; Grollman
v. Ward; 181 Ill. App. 598; 10 Enc. of Evidence; Stover v.
Flower (Ia.), 94 N. W. 1100; Strader's Adm. v. Manufac-
turing Co. (Ky.), 142 S. W. 1073; 31 Cyc. 1640; Condit v.
Baldwin, 21 N. Y. 219; 78 Am. Dec. 137; Sturdevant v.
Bank (Neb.), 87 N. W. 156 and 95 N. W. 819; North Star
Boot & Shoe Co. v. Stebbins (S. D.), 48 N. W. 833; 5 Cyc.
475; Bank v. Armstrong, 152 U. S. 346, 38 Law Ed. 470.)
Meyer & Chapman were charged with knowledge that
Deegan had no authority to represent defendant bank in
soliciting the release of mortgage referred to in his letter.
The addition of the title "assistant cashier" to the name of
W. J. Deegan had no effect other than to bind Deegan per-
sonally. (Metcalf v. Williams, 104 U. S. 93, 26 L. Ed.
665.)  If Deegan acted in a representative capacity, it was
as the agent of Park Loan & Trust Company.  The District
Court abused its discretion in denying a motion for a con-
tinuance.

W. L. Walls and E. E. Enterline, for plaintiff and re-
spondent.

The ownership of the note is not denied by the answer,
which must contain a general or specific denial of each ma-
terial allegation of the petition controverted by defendant.
(Section 4389 Comp. Stats. 1910; Section 4422 Comp Stats.
1910; 31 Cyc. 198.)  After denying knowledge, it is super-
fluous to add a denial of facts.  (Flood v. Reynolds, 13
How. Pr. 112.)  No assignment of error attacking the
sufficiency of the evidence to sustain the judgment is pre-
sented and the point is not reviewable.  (Capitol Hill Bank
v. Bank, 24 Wyo. 423.)  Where parties join in an assign-
ment of error in their petition, the judgment will be affirmed
even though improperly entered against one.  (Greenwalt,
et al. v. Imp. Co., 16 Wyo. 226.)  There was no evidence
of delivery of the note to J. W. Chapman, nor of the en-
dorsement to him by Meyer & Chapman.  Evidence on the
point was necessary to establish ownership by Chapman
individually.  Deegan, as assistant cashier, had authority to
conduct the transaction for the bank. (3 R. C. L. 444.)  A

real estate loan made by a national bank can be enforced. (Hanover Bank v. National Bank, 104 Fed. 421.) Meyer & Chapman were induced to deliver the note and release the mortgage by representations made to them by Deegan, the authorized agent of the First National Bank of Cody, and the bank permitted it to be diverted and therefore became guilty of conversion. Its co-defendant having received the note of a joint tort-feasor and both must respond in damages for the value of the property converted. The motion for continuance was properly denied. That a witness failed to appear is not ground for continuance, since the party desiring his testimony should take his deposition. Especially so when the witness resides out of the State. (Keffer v. State, 12 Wyo. 49, 73 Pac. 556; Comp. Stats. 1910, 4547.) The judgment should be affirmed.

POTTER, JUSTICE.

This action was brought by John W. Chapman as surviving partner of the co-partnership of Meyer & Chapman against the First National Bank of Cody and the Park Loan & Trust Company for the recovery of damages for the alleged conversion of a certain promissory note and a release of a mortgage securing the same. There was a trial to the court without a jury, a general finding for the plaintiff and assessing his damages in the sum of $5,080.67, and a judgment in his favor for that amount and costs. The case is here on appeal.

1. As shown by the time of filing the pleadings which appear in the record, the case was at issue on January 16, 1916, and the trial was commenced on May 22, 1917. This was during the May term of the court. On May 21, 1917, the court overruled a motion of the defendants for a continuance to the next term, filed and presented on that day on the ground of the absence of a witness. That ruling is specified as error, and the question is whether the motion was improperly denied upon the showing made as to the diligence used to obtain the evidence. The statute provides that a motion to postpone a trial on account of the absence

of evidence can be made only upon affidavit showing the materiality of the evidence and that due diligence has been used to obtain it, and if for an absent witness the probability of procuring his testimony within a reasonable time. (Comp. Stat. 1910, sec. 5139.)

The affidavit in support of the motion states that upon the 12th day of May, 1917, and immediately subsequent to the date when, by agreement of counsel, the cause was set down for trial on May 22, 1917, the affiant, one of defendants' attorneys, had a telephone conversation with W. J. Deegan, who resides at Roundup, Montaa, wherein said Deegan assured affiant that he would go to Cody, where the trial was to occur, not later than Monday morning, May 21, 1917, to testify in behalf of defendants on the trial of the cause on May 22, and that it would be wholly unnecessary to take his deposition, or to resort to any method to compel his attendance for said trial on that day. That said Deegan then also informed affiant that business matters were taking him to Idaho, but that he would return in ample time to be at Cody at the time set. That on the morning of May 20, 1917, affiant received a telegram from said Deegan, sent from Roundup and dated May 19, 1917, reading as follows: "Was called back from Butte because of case of pneumonia in family. Balance of party gone on and I will join them as soon as I can get away, so will absolutely impossible to keep my promise to you to go to Cody Tuesday." That affiant thereupon immediately endeavored to get into telephone communication with said Deegan, to persuade him to keep his promise to be present at the trial at the time set, but failed to reach him by reason of the fact that the telephone line was out of order, and that "although due and proper diligence was used by your deponent to obtain said W. J. Deegan as a witness for the trial, * * * nothing was accomplished by reason of the facts" aforesaid. That affiant believes that if a continuance for the term be granted the testimony of said Deegan can be procured either upon deposition or in person at the next term.

We think that on this question the case is ruled against the appellants by the decision in Keffer v. State, 12 Wyo. 49, 73 Pac. 556. That was a criminal case, and the fact was stated in the opinion that our statute for postponing a trial on account of the absence of evidence applies alike to civil and criminal causes. It was held not to be error to refuse a continuance applied for on the ground of the absence of witnesses residing in another state, where the defendant had relied on their promise to attend, and made no effort to secure their testimony by deposition, nor to secure their attendance by legal process, other than by sending them subpoenas having no extra-territorial effect. It is true that in that case there had been one continuance on the ground that defendant had not had time to prepare for trial, and the second application was presented nearly six months afterwards, and that the record here does not disclose a previous continuance or motion therefor. But in this case a year and several months had elapsed after the case was at issue and before the application was made, with two terms of court intervening, if held as provided by law. And while the fact of one continuance was recited in the opinion in the Keffer case, the principle stated was not made dependent upon such fact. The court said: "The defendant chose to rely upon their promise to attend and he took the risk that they would be present." And supplementing this a statement was quoted from the opinion of Judge Brewer in a Kansas case to the effect that as a general rule when the attendance of a witness cannot be compelled a party relies upon his voluntary appearance at his peril. Then the following was quoted from the opinion in an Indiana case, as stating the rule supported by the great weight of authority:

"Where a party desires the testimony of a witness not within the jurisdiction of the court, he must take the deposition of the witness, for he cannot have compulsory process to compel attendance, and he has no right to have a continuance, upon the ground that the witness has promised to attend, and will attend at a future term."

2.    The note alleged to have been converted was a note of one Russell Kimball payable to Meyer & Chapman, secured by a duly executed mortgage upon certain land in Park county in this state, and dated at Red Lodge, Mont., February 5, 1906. It is alleged that the note was sent by the payees to the defendant bank, at its request, for collection, together with a duly executed release of the mortgage securing the same; and that the said note and mortgage at that time were owned and in the lawful possession of said Meyer & Chapman, a co-partnership engaged in the banking business at Red Lodge, Montana, where both of the partners, W. F. Meyer and John W. Chapman, resided. That said request for the note and release was made by the defendant bank on January 5, 1912, and thereupon the said co-partnership sent and delivered the note to the said bank, together with the release duly executed and acknowledged, with instructions to the defendant bank to surrender said note and deliver said release upon the payment of the sum due thereon.

The evidence shows that the request for said note and release was by letter dated at Cody January 5, 1912, written upon the letterhead of the defendant bank, addressed to "Meyer & Chapman, Bankers, Red Lodge, Mont.", signed "W. J. Deegan, Ass't Cashier", and reading following the address, so far as material here, as follows:

"My dear Alden:

"We are negotiating a real estate loan for the Kimballs here, and find that you have a mortgage on a portion of the ground in question. If agreeable to you, I will be pleased to have you execute the release of this mortgage, which I am herewith enclosing, and send the same, together with the notes secured, to the First National Bank here, with the understanding that the release is to be used when the money is turned over to you. I would also appreciate it if you would return this to us at the earliest possible date, as we might have use for it any day, or the matter might be delayed for some little time, but in any event, we would have it here when we were in a position to use it. The signature

to this instrument must be witnessed by at least one person, and the acknowledgment should be taken before some other Notary than yourself, as under our laws you would be incapable of taking the acknowledgement of either Meyer or Chapman to an instrument affecting the bank, as you are an officer of the co-partnership. As soon as the deal is completed we will remit you the proceeds of your note to that date."

The "Alden" personally addressed in the letter was F. H. Alden, the cashier of the Meyer & Chapman Bank. Pursuant to that letter the said Alden, as cashier, transmitted an executed release of the mortgage by letter written on the letterhead of the banking house of Meyer & Chapman, dated Red Lodge, Mont., Jan. 11, 1912, and reading, so far as material, as follows:

"W. J. Deegan, Esq.,
    "Cody, Wyo.
"Dear Bill:
    "Replying to your favor of the 5th inst., I enclose herewith Release of the Kimball Mtg. as per your request. Our note, up to Jan. 15th., amounts to $3916.00 * * *.
                    "Yours truly,
                        "F. H. Alden, Cashier."

On January 13, 1912, by letter on the letterhead of said defendant bank, the receipt of said release was acknowledged as follows:

"Mr. F. H. Alden, Cashier,
    "Red Lodge, Mont.
"My dear Alden:
    "I am just in receipt of your letter of January 11th enclosing a release of mortgage duly executed and I shall be pleased to hold the same until the payment is ready, when I will return you the amount named and use the release.
                    "Very truly yours,
                        "W. J. Deegan
                        "Asst. Cashier."

On April 15, 1912, the note was transmitted from the Banking House of Meyer & Chapman, by letter of that date, reading as follows:

"W. J. Deegan, Esq.
   "Cody, Wyo.
"Dear Deegan:
   "I enclose herewith the Kimball note amounting to $4028.59 to this date. Trusting you will be able to relieve us of this old sore in the near future I am

                              "Yours truly,
                              "J. W. Chapman
                                        "Alden."

The receipt of the note was acknowledged by letter dated at Cody, April 19, 1912, and, like the others signed by Deegan, upon the stationery of the bank, reading as follows:

"F. H. Alden, Esq., Cashier,
   "Meyer & Chapman Bank,
      "Red Lodge, Mont.
"My dear Alden:
   "I am in receipt of your letter of the 15th inst., enclosing Kimball note. There has been another trifling delay in regard to the title to some of this ground, which will be cleaned up within a few days, when we will remit you the amount in question.   *   *   *

                              "Very truly yours,
                                        "W. J. Deegan."

Although signing as assistant cashier all but one of the above letters bearing his signature, the evidence shows that Deegan became at least the acting cashier and the managing officer of the defendant bank in January, 1911, and it is conceded by the brief of appellants that "at the times mentioned in the petition", which includes the time of the correspondence aforesaid, "the evidence establishes" that said Deegan was cashier of the defendant bank and manager of the defendant loan and trust company.

It appears that the release was filed for record in the office of the County Clerk of Park County, of which county Cody is the county seat, on April 9, 1912, the receiving book of that office showing that it was received for record from W. J. Deegan. Said release was signed: "Meyer & Chapman, a co-partnership, by W. F. Meyer, one of the co-partners", and acknowledged by said Meyer as the voluntary act and deed of himself and of Meyer & Chapman, and was dated January 10, 1912. Prior to the trial the plaintiff had not been able upon inquiry and search at the bank to find the note or obtain any satisfactory account of it, but upon the trial it was produced by an officer of the bank upon a subpoena *duces tecum* who, as the testimony shows, had found it in a drawer of a desk which had been used by Mr. Deegan during his connection with the bank, and at the time in question in 1912 was in a room of the bank occupied by him and formerly by the cashier who immediately preceded him as the cashier and managing officer of the bank.

When the note was produced at the trial it had upon its back the following endorsement: "Pay John Chapman or Order, sans recourse Meyer & Chapman by F. H. Alden." Upon the fact of that endorsement it is contended by the appellants that the partnership was shown thereby not to have been in possession of the note when it was transmitted for collection, but that it was the individual property of Chapman, and that, therefore, the plaintiff cannot recover in this action brought by him as surviving partner. There is no testimony directly explaining the endorsement. F. H. Alden, the cashier of the Meyer & Chapman Bank when the note left that bank, and the one who transmitted it, was asked as a witness by plaintiff's counsel if he could state how the endorsement got on the paper, but the question was withdrawn upon its being objected to, although the objection was overruled. That witness, however, testified that when he transmitted the note it was one of the bills receivable belonging to and in the possession of Meyer & Chapman. And Mr. Chapman testified that until the death of

his partner, Meyer, the note and mortgage belonged to the
partnership, and that it constituted part of the partnership
assets at the time of Meyer's death, for which he, the plain-
tiff, was bound to account as surviving partner. It is ad-
mitted by the pleadings that pursuant to the law of Mon-
tana and an order of the proper court in that state said
Chapman had given bond as surviving partner to close up
and settle the partnership business.

Upon this evidence it cannot be held that when the note
was transmitted for collection it was the individual property
of Chapman or in his possession independent of the partner-
ship of Meyer & Chapman. If it might be inferred from the
indorsement that at some time before sending the note to
Cody there had been a transfer of the possession or owner-
ship thereof to Chapman individually, the inference from
the evidence would be equally strong that the partnership
had again acquired the possession and become the holder
thereof, and the indorsement might have been stricken out
under the provision of the statute authorizing the holder of
a negotiable instrument to strike out any indorsement not
necessary to his title. (Comp. Stat. 1910, sec. 3206.) But
the mere fact of the indorsement, the original payees having
possession of the instrument, would not show either title or
possession in the indorsee, for there is nothing in the case
to show that the indorsement was completed by delivery.

The negotiable instruments law provides that an instru-
ment is negotiated when it is transferred from one person
to another in such manner as to constitute the transferee the
holder thereof; if payable to bearer it is negotiated by de-
livery; if payable to order, it is negotiated by the indorse-
ment of the holder, completed by delivery. (Comp. Stat.
1910, sec. 3188.) And in defining the meaning of words
used in the law it is further provided that "Indorsement"
means an indorsement completed by delivery, and "Holder"
means the payee or indorsee of a bill or note, who is in
possession of it, or the bearer thereof. (Id. sec. 3349.)
The note in question was payable to order.

The testimony of Alden and Chapman as to the fact that the note was in the possession of, and one of the bills receivable belonging to the partnership is not to be regarded as stating a mere legal conclusion at variance with the note itself and the indorsement thereon, nor as an opinion or conclusion upon facts appearing in the case, but rather as stating a fact within the personal knowledge of the witness. (Pichler v. Reese, 171 N. Y. 577, 64 N. E. 441; Olson v. O'Connor, 9 N. D. 504, 84 N. W. 359, 81 Am. St. Rep. 595.) Chapman's testimony on the subject was not objected to, and although objections were interposed to the statement by Alden of the fact of possession and ownership, and overruled, and the court's ruling thereon was specified as error, the point as to the admissibility of the testimony is not discussed in the brief of appellants. But such testimony seems to come within the principle stated in Pichler v. Reese, supra, that witnesses may testify to facts, which are within their own knowledge, even though the facts are such as the jury is eventually to determine, there being a distinction between asking a witness to testify to a fact, the existence of which depends upon a collection of facts, or upon the construction of a written instrument, and asking him to testify to a fact, which is, necessarily, within his own knowledge.

3.    The further contentions of counsel for appellants relate to the sufficiency of the evidence to sustain the judgment as against the defendant bank. The additional facts to be considered in disposing of these contentions, including testimony uncontradicted unless by the correspondence aforesaid or other documentary evidence, may be stated as follows: The directors and stockholders of the two defendant corporations of which Deegan was the managing officer as aforesaid, were practically the same, and their business was transacted in the same building and rooms, and at least one other of the employees was in the employ of both institutions. In the front or main room were two windows—so-called in the testimony—supposedly in the framework or fixtures separating the private from the public part

of the room, one being used generally by the bank and the other by the trust company, and the vault and working space were used in common by the two institutions.   Back of that was a private room used by Mr. Deegan, and in the rear of that a room described in the testimony as the abstract room of the defendant loan and trust company.   The desk in which the note in question and certain other papers to be mentioned were found was, in 1912, in the private room used by Deegan.   In that room Deegan transacted general banking business and also the business of the loan and trust company.   The note was found with other papers in an envelope upon which was written, when found: "Kimball & Kimball," and underneath that, "Russell Kimball to Meyer & Chapman."   Among the other papers was a bill or account of the Cody Trading Co. for $1498.96 against Kimball Brothers, including a note to that company for $880.31, signed by Farley Kimball and Russell Kimball, attached to the bill, a note of the same parties to E. E. Lonabaugh for a small amount, three notes to the Park Loan & Trust Co., signed by Russell Kimball and James P. Kimball, one for $500.00 and the other two for $475.00 each, one note for $785.00 to the same company, signed by Russell Kimball, and two slips of paper containing figures—one of them being evidently a computation of interest and the amount due on the Meyer & Chapman note on April 15, 1912, and the other, without date, a computation of the total amount due upon the several obligations aforesaid, including $4028.59, the computed amount due on the Meyer & Chapman note, showing a total of $7,719.60, and underneath that, but without adding them, the figures 188 indicating that amount in dollars.

It further appears that on January 17, 1912, a mortgage release was filed for record releasing a mortgage of James P. Kimball to the defendant trust company, executed January 1, 1911, which release was delivered for filing by said W. J. Deegan.   That on January 15, 1912, a mortgage was filed for record, which purported to have been executed on January 8, 1912, and acknowledged on the 13th of that

month, by James P. Russell, Ina M. Farley, and Mina Kimball to the said Park Loan & Trust Company, covering with other lands the lands included in the Meyer & Chapman mortgage as described in the release of that mortgage. The Meyer & Chapman mortgage was the only lien on the land covered thereby until the last above mentioned mortgage to the trust company was executed and delivered. On January 19, 1912, the amount of $7,000.00 was deposited or placed to the credit of Kimball & Kimball in the Park Loan & Trust Co. The amount due the Cody Trading Co. was placed to its credit in the defendant bank on April 23, 1912, the release of the mortgage to that company having been previously delivered to the bank, at its request.

Russell Kimball testified that Deegan had informed him that the trust company desired a readjustment of the business of the Kimballs, so as to secure all their obligations by one mortgage, pursuant to which the mortgage for $7000 was executed in January, 1912, and that by the agreement the Meyer & Chapman mortgage was to be taken care of by the trust company, as well as all the other notes above mentioned found in the envelope aforesaid with the Meyer & Chapman note, except the one to Lonabaugh which, Mr. Kimball stated, he did not know had been sold to the trust company and its inclusion in the new mortgage was a surprise to him; and the Meyer & Chapman mortgage was to be cancelled by the execution of the new mortgage. He also testified that the transaction was not with Deegan individually but with the trust company; that neither the Meyer & Chapman note nor the release of the mortgage securing it had been delivered or surrendered to him or his brother by either of the defendants, although he had demanded them several times of Deegan as an officer of the trust company and his assistants.

Mr. Alden testified that he had been acquainted with Mr. Deegan for 16 or 17 years, and before the time of the latter's residence at Cody, and that at one time they had worked together in the Meyer & Chapman bank at Red Lodge, Montana; that the Meyer & Chapman bank had no personal dealings with Deegan after he became connected with the

defendant bank, but when he was acting as cashier of that bank any transaction of the former bank with the latter would go through Deegan as cashier; that the note and release in question were sent to the bank, although the letter transmitting them may have been addressed to Deegan, and that all the financial transactions and correspondence between the two banks had been conducted in that way.

Plaintiff's first inquiries at the bank concerning the disposition of the note and release were made while Deegan remained with the bank as cashier, and his explanation was that the papers had become misplaced in some way, and later he made the same statement to plaintiff's attorney, who called at the bank to ascertain what had become of the papers, and invited and assisted in a search for them in the bank vault; all of which occurred after the recording of the release, but before the plaintiff or his attorney had ascertained that it had been recorded.

The specific contentions upon all the evidence are: That to establish a liability against the bank it was necessary to show "ostensible authority" in Deegan as its agent to make the representations in his letter of January 12, 1912, respecting a real estate loan to the Kimballs, and that the evidence fails to show such authority. That the bank being prohibited by the National Banking law from making loans on real estate, Meyer & Chapman were charged with knowledge that its agent was without authority to solicit the mortgage release for the purpose of consummating a real estate loan. That Deegan's letters signed either "Assistant Cashier" or without official description had no effect except to bind him personally, and finally, that if he acted at all in a representative capacity his representations were made as the agent of the trust company, and not as agent of the bank.

The right to recover against the bank does not depend upon the statement or representation with reference to the negotiation of a real estate loan for the debtor, but upon the fact of its receiving and accepting the note for collection together with the release, and wrongfully disposing of

the same. What was said with reference to a real estate loan in the letter requesting that the note and release be sent to the bank was evidently to explain the probability or expectation of payment through negotiations then pending, and it is immaterial whether the bank was or was not a party to such negotiations, or whether its cashier was authorized in his capacity as such officer to negotiate the loan or to represent that it was being negotiated by the bank. But the statement in the letter that "we are negotiating a real esate loan for the Kimballs here" does not necessarily mean or imply that the bank was intending or expecting to make the loan direct or with money under its control, and therefore was not notice to Meyer & Chapman that an illegal loan was contemplated, charging them with knowledge of want of authority in the cashier to act for the bank in requesting the sending of the papers to the bank. Nor would the situation be affected by any intention of the bank to make a real estate loan. The owner of the note and mortgage would not be bound to inquire concerning the security to be taken by the bank if it advanced the money.

The acceptance of commercial paper for collection by banking corporations "is a well-settled incident of the banking business, and they will be liable in case they fail to perform their duties in making the collection." (3 R. C. L. 424; 7 C. J. 597, 619-620; and see Porter v. Packers Nat. Bank, 95 Neb. 223, 145 N. W. 255; Knapp v. Saunders, 15 S. D. 464, 90 N. W. 137.) And the cashier clearly had authority to accept for the bank the papers in question here, and his letter requesting that they be sent to the bank serves with the other correspondence to show the conditions or understanding upon which the bank received them. The cashier of a bank is generally its chief executive officer, and its general agent in the transaction of its legitimate business. (1 Morse on Banks & Banking (5th ed.), sec. 152; 3 R. C. L. 444; First Nat. Bank v. Seass, 158 Ill. App. 122.) He has charge of the bank's correspondence, "and letters on corporate business are properly addressed to him, and whatever statements or information are contained in them will,

in law, affect the bank with notice." (1 Morse on Banks & Banking (5th ed.), sec. 162.) "Those acts which constitute the ordinary and customary functions of cashiers, and which he has inherent power to do, bind the bank as its own acts in favor of any person dealing with the bank and having no notice of any restriction upon the cashier." (Id. sec. 171.)

The conclusion cannot be avoided that the note and release were sent to and received by the bank. Deegan's request, over his signature as assistant cashier, was that they be sent to the bank, and the letter enclosing the release stated that it was in reply to his letter and that the release was enclosed "as per" that request. The failure to send the note at the same time is not explained in the evidence, but Alden testified as his recollection that it was enclosed with the letter of April 15, 1912, signed "J. W. Chapman—Alden", upon Chapman receiving a communication by telephone, who then dictated the letter. As stated above, the reply to that letter was written upon a letterhead of the bank, and stated the expectation that the amount due would be remitted within a few days. It is probably true that in negotiating or making the loan to take up the several Kimball obligations, Deegan was acting for the trust company, but we regard the evidence as clearly showing that he assumed to represent the bank in requesting and receiving the papers from Meyer & Chapman, and that the latter understood, as they had a right to do, that he was representing the bank in that matter. The trust company was not mentioned in any of the correspondence, and the evidence shows that Meyer & Chapman had no dealings with that company.

Another action brought in the United States District Court for Wyoming by the Meyer & Chapman State Bank was one brought against the defendant bank as for money loaned, and involved correspondence on the part of the bank signed by Deegan as its cashier, written on letterheads of the bank, and also a telephone communication between Deegan and Chapman. At the conclusion of the evidence in that case the trial court announced that the plaintiff had not established its case, and that, taking it altogether, it

showed that there was no guarantee by the bank, but the remedy, if any, was against Deegan, and judgment was rendered for the defendant. The cause was taken on error to the Circuit Court of Appeals for the Eighth Circuit, where the judgment was reversed, and the court said: "The evi-- dence clearly shows that he (Deegan) represented the paper as a part of the assets of defendant's bank, and that he offered is as collateral for a loan to his bank. Defendant cannot escape the repayment of money, which it received and used, upon a showing that the note which it offered as collateral to the loan in fact did not belong to it. Whether that was so or not, the loan was certainly made to it." (Meyer & Chapman State Bank v. First Nat. Bank of Cody, 248 Fed. 679, 160 C. C. A. 579.)

We conclude that the judgment must be affirmed, and it will be so ordered.                                        *Affirmed.*

BEARD, C. J., concurs.

BLYDENBURGH, J., being ill, did not participate in the decision.

ON PETITION FOR REHEARING.

PER CURIAM.

The appellants have filed a petition for rehearing. The only point made in support of the petition was considered by the court in disposing of the case upon the former hearing. It is again contended that the evidence shows that the note alleged to have been converted was in the possession of the plaintiff Chapman individually at the time the note was transmitted to the defendant bank, leaving him without any right to recover in the action as surviving partner of Meyer & Chapman. But we see no reason for doubting the correctness of the court's conclusion upon that matter. The basis of the contention is the fact that the note, as produced in evidence, shows an endorsement by Meyer & Chapman to John W. Chapman, and that the letter transmitting the note was signed in the name of J. W. Chapman; and it is stated in the brief in support of the petition for rehearing that said letter was not from the banking house of Meyer & Chapman, but that the sender of the letter and note was J. W.

Chapman, showing thereby that he was then, individually, in possession of the note. That letter, however, was written upon the stationery of the Meyer & Chapman bank. Its heading is "Banking House of Meyer & Chapman", and it was signed "J. W. Chapman" with the name "Alden" underneath, showing that the signature was written by Mr. Alden, who was the cashier of the bank, and Mr. Alden testified with reference to it: First, that it was the letter which he wrote transmitting the Kimball note, and, again, that the request for the note—it not having been sent with the release of the mortgage—was by telephone, and that he "evidently wrote the letter as dictated by Mr. Chapman". And the fact that Mr. Chapman dictated the letter or that his name was signed to it individually is not inconsistent with the fact testified to by both Alden and Chapman that the note was then in the possession of and belonged to Meyer & Chapman, or the fact testified to by Alden that the note at that time was one of the bills receivable of the Meyer & Chapman bank. As against the testimony distinctly stating the fact that Meyer & Chapman owned and were in possession of the note at the time it was transmitted to the defendant bank the fact of the endorsement aforesaid without any evidence of a delivery to the endorsee is not sufficient to disprove the fact of possession by the partnership or to show that the note was in the possession of Chapman individually. Nor does the fact that the letter was dictated by Chapman and signed in his name show that the note had been delivered to Chapman so as to complete the endorsement, in view of the testimony that when it was transmitted it was in the possession of the partnership, and the absence of any testimony showing that it had at any time been out of their possession until it was sent to the defendant bank.

The note with the endorsement was introduced in evidence by the defendants, the appellants here, and their counsel inquired specifically of Chapman as to the possession of the note after it was sent to Cody, and the opportunity was open to appellants to inquire as to whether there had been any change of possession before the note was sent to Cody,

or at or after the time of the endorsement, or in connection
with it. But they seem to have carefully avoided any inquiry
as to that matter, and neither Alden nor Chapman were
cross-examined as to the fact brought out in their testimony
that in January, 1912, and up to the time that the note was
sent to the defendant bank Meyer & Chapman were in
possession of the note and that it was a part of the property
of that partnership. And when the plaintiff sought, by a
question referred to in the former opinion, to have the
cashier, Alden, explain the fact of the endorsement upon
the note an objection thereto was interposed by the defend-
ants, leading to a withdrawal of the question, notwithstand-
ing that the objection was overruled, and the substitution
of other questions bringing out the testimony of the witness
that the note was one of the bills receivable and in the pos-
session of Meyer & Chapman in January, 1912, and also in
April, when it was transmitted.

The fact that the note was in the possession of Meyer &
Chapman being shown by positive and undisputed testi-
mony there is no room for the presumption of delivery by
an endorser who is not in possession, under section 3174,
Compiled Statutes, 1910, providing that where the instru-
ment is no longer in possession of a party whose signature
appears thereon, a valid and intentional delivery by him is
presumed until the contrary is shown. Nor is the testimony
of Alden and Chapman with respect to the fact of possession
at all analogous to the testimony which was held to amount
to a mere legal conclusion if comprehending what was con-
tended in Capitol Hill State Bank v. Rawlins National Bank,
24 Wyo. 423, 160 Pac. 1171, cited and relied upon by the
appellants. In that case an officer of the plaintiff bank,
which was suing upon a note made to another party and
alleged to have been endorsed to it, testified that the note
was "negotiated with the plaintiff bank". The endorse-
ment, which was denied, was not proved unless by that testi-
mony, for it was not introduced nor received in evidence;
but it was contended that the testimony that the note was
negotiated with the bank proved the fact that it had been

endorsed and, delivered to the bank by the payee, on the ground that the word "negotiated" includes endorsement as well as delivery of an instrument payable to order. We said that so far as the use of that word in the question propounded to and answered in the affirmative by the witness may have implied a legally proper and completed transfer, it involved a mere legal conclusion, and without any showing of the facts of the transaction, except as it might tend to show a transfer to the plaintiff by someone not necessarily the payee. And in the former opinion in this case, in holding that the testimony of Alden and Chapman as to the fact of the possession of the note by the partnership was not to be regarded as stating a mere legal conclusion we referred to the distinction between asking a witness to testify to a fact, the existence of which depends upon a collection of facts, or upon the construction of a written instrument, and asking him to testify to a fact, which is, necessarily, within his own knowledge, and the rule because of that distinction that witnesses may testify to facts which are within their own knowledge, even though the facts are such as the court or jury is eventually to determine:

We are not convinced that there should be a rehearing for a reconsideration of the question as to whether the note when it was transmitted to the defendant bank was in the possession of Chapman rather than Meyer & Chapman, and no other reasonable ground is perceived for granting a rehearing. It will, therefore, be denied.

*Rehearing denied.*